Mr. Justice HUNT
 

 delivered the opinion of the court.
 

 Had the bill of lading contained nothing more than the terms and clauses in the part of it which is before the red-letter clause, the argument made in behalf of the Androscoggin Mills would be a strong one. We must,, however, examine the whole contract, and construe and give effect to all its provisions.
 

 This bill of lading, in the first place, is a contract covering the cotton during the entire period of its transmission from Columbus to Boston, and over every part of the route. Not only is this the general law of the bill of lading, from the fact that Columbus was the place of receiving, and Boston the place of delivering, the cotton, but this bill of lading is emphatic in its declaration, that such is its character. It is headed, “ Great through fast route to all points north and east,” &0. It says: “This reliable through line makes the shipment of cotton and tobacco a specialty;” “contract for a through rate;” and again, “Through rate $10.25 per bale from Columbus to Boston.” It is evident, therefore, that the cotton is the subject of the contract of carriage not only from Evansville to Boston, to which the plaintiffs in error would confine it, but from Columbus to Evansville as well.
 

 Bearing this in mind, it will be observed in the second place, that the contract separates itself into two parts — one, limiting the liability of the railroad company from Evansville to Boston, the other governing its liability generally. Thus the portion already referred to as relied upon by the defendants in error, undoubtedly was intended to be limited in its range. The liability under'it and the exemption also,
 
 *602
 
 is expressly made dependent on the arrival of the goods at Evansville, and until they have so arrived, neither the liability nor the exemption commences. We can, however, be asked to hold that the liability or the exemption on a portion of the route is entirely omitted from the terms of a bill of lading which provides for transportation over the whole route, and where the compensation is specified as covering the whole route, only where it so appears by the plainest language. No doubt terms might be used in a bill of lading for the transportation of cotton from Mississippi to Massachusetts, by which exemptions from liability for loss by fire while in a railroad car from Evansville northward should be made, and no such exemptions should be made while the cotton was on the deck of a steamboat. We should not, however, expect to find such provisions, and we should require them to be clearly expressed.
 

 All of the first general paragraph of the bill of lading may fairly be said to relate to the conditions upon which the transportation from Evansville northward shall be made. In its general terms we have already considered that paragraph.
 

 A new subject, however, is taken up in the next sentence. It is not only the beginning of another paragraph, with the usual space between it and what precedes it, but it is printed in red ink, while what precedes it is in ordinary black type. Its importance in the opinion of the shippers is thus manifested. Attention is called to it as involving important provisions. Dropping the reference to Evansville, and the arrival of the goods there, it uses the most general terms: “
 
 The Evansville and Grawfordsville Railroad Company will not be liable for loss or damage by
 
 fire,
 
 from any cause
 
 whatever.” It is an evident addition to the contract as expressed in the first clause. The railroad company there define the terms and conditions upon which they will be liable after the property has reached Evansville. While on the passage from Evansville northward, non-liability for loss by fire is twice stipulated for, — once while in depots or places of transhipments, and again in general terms, — the evident object and
 
 *603
 
 intent of the first clause is to affect this part of the route only. A new branch of the contract is then taken up, and the difference is intended to be made plain to the eye as well as the understanding. In the red-ink clause they use terms applicable to the entire contract of shipment, viz.: They “ will not be liable for loss or damage by fire, from any cause whatever.” No language of limitation is used. It is as if they had said, “ Should damage by fire occur to this cotton during any part of the route, and from any cause whatever, this company will not be liable.”
 

 It is quite unreasonable to suppose that the company here intended to guard themselves against a liability for which they had twice already stipulated that they should not be
 
 liable,
 
 to wit, of loss by fire after the cotton had reached Evansville. The clause in red was intended to cover the whole contract. Wherever, whenever, or however they would by law be liable for a loss by fire, from that liability they intended to relieve themselves. The exemption was intended to be as broad as was the original liability.
 

 A careful reading of the bill of lading shows that the red-ink clause not only, but all that follows it, must have been understood by the parties to cover the whole route, and not to be limited to a part of the distance only. Thus, after providing an exemption from liability for loss by fire from any cause whatever, the bill of lading goes on to say, “All property shipped on this contract will be subject to the expense of necessary repairs and remarking.” Can it be doubted that if the sacks of this cotton had required repairing or remarking from causes occurring before it reached Evansville, that it would have been a proper item of expense under this
 
 clause?
 
 “In the event of loss or damage under the provisions of this agreement (it proceeds) the value or cost at the point of shipment shall govern the settlement of the same.” No one can doubt that the value at Columbus will govern the amount of a recovery under this clause. And again, the clause, “ Said property to be forwarded immediately after its arrival at Evansville, . . . and to be delivered at Boston upon the payment of freight and charges,”
 
 *604
 
 is, by its very terms, applicable to goods not yet at Evansville, when the contract takes effect.
 

 We are of opinion that the argument of the defendants in error, upon which the judgment below was based, that the exemption from liability by fire was limited to fire occurring after the cotton had been received at and shipped from Evansville, was erroneous. The exemption covers the entire route.
 

 Judgment reversed, and judgment upon the demurrer ordered in favor of
 

 The plaintiffs in error.