EDWARD WYMAN, Appellant, *v*. CHICAGO AND ALTON RAIL-
ROAD COMPANY, Respondent.

### May 1, 1877.

1. Where several common carriers, each having its own line, associate and form what, to the shipper, is a continuous line, and contract to carry goods through for an agreed price, which the shipper pays in one sum, and which the carriers divide among themselves, then they are jointly and severally liable to the shipper with whom they have contracted, for a loss taking place on any part of the whole line, and the word "partners," or any particular word to describe the relation existing between the carriers, need not be used in the petition.

2. Where there is any evidence tending to show the existence of such an association, contract, and loss, the case should not be taken from the jury.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

J. M. HOLMES, for appellant, cited: *Coates* v. *United States Ex. Co.*, 45 Mo. 238; *Wilcox* v. *Parmlee*, 3 Sandf. 610; *Nashua Lock Co.* v. *Railroad Co.*, 48 N. H. 339; *Barton* v. *Wheeler*, 49 N. H. 9; *Bradford* v. *Railroad Co.*, 7 Rich. 201; *Quinby* v. *Vanderbilt*, 17 N. Y. 307; *Chouteau* v. *Leach*, 18 Pa. St. 224; *Read* v. *St. Louis, etc., Ry. Co.*, 60 Mo. 199.

DRYDEN & DRYDEN, for respondent.

HAYDEN, J., delivered the opinion of the court.

This is an action for breach of a contract of affreightment. There are two counts in the petition, but only one need be noticed. The allegations are to the effect that the defendant, a corporation, with the Michigan Central, the Boston and Albany, and other railroad companies, whose names are given, constituted a joint association, under the name of the "Blue Line Transit Company," for the purpose of running cars directly through from Boston and New York to St. Louis, and transporting goods, without change of cars, over the roads of the companies forming the Blue Line Transit Company; that defendant and these other companies were common carriers; that the defendant and the other companies, under said name, agreed to carry from Boston to St. Louis, and there to deliver to plaintiff, certain goods which they received and gave their bill of lading for under said name; that said companies, including defendant, failed, etc., and delivered the goods badly damaged. The answer denies these allegations, and sets up a special contract made with the Boston and Albany Railroad Company for carriage of the goods. At the trial the plaintiff put in evidence a bill of lading for the goods, signed "James Mill, Agent," headed, "Through freight. Blue Line

Transit Co. Boston to St. Louis. Contract under joint arrangement of the Boston and Albany, New York Central, Great Western, Michigan Central, and connecting railroads," and containing the clauses, " to be transported to and delivered at the depot of the line at St. Louis," and " this contract, and the responsibilities of the parties hereto, being limited and controlled by the rules and regulations printed upon the back of this receipt, as also by the terms of their printed tariffs of freight." On the margin of the bill of lading is marked, " Blue Line, 19 State St., Boston," and on its back are " conditions and regulations," and an elaborate classification of articles. It appeared that this bill of lading was given to the plaintiff, in Boston, by Mill, who was the agent of the Boston and Albany Railroad Company, on the shipment of the goods. There was evidence, on the trial, tending to show that several railroad companies, of which the defendant was one, put into the " line " certain cars, painted blue, and that these cars were used as " through cars," running over the roads of these different companies without breaking bulk; that the companies in the " line " employed a common agent at Detroit, who acted as an adjuster, keeping the mileage of the cars and settling the balances for their use; that, with the exception of this general manager of the " Blue Line," the agent of each road acted for the " line," as the agent Mill did when he signed the bill of lading; that this bill of lading was in the form then used by the " line;" that the freight due each road was apportioned and paid to that road out of the gross freight charged; that these goods came over defendant's road, and that it collected from plaintiff the total freight, giving receipts signed " Samuel Smith, Agt.," headed, " Chicago and Alton Railroad, Blue Line," and containing a notice of the joint arrangement of the roads by which the goods were sent from New York and Boston to St. Louis without change of cars. It further appeared that the agent of defendant at St. Louis had the words

" Blue Line " conspicuously displayed over his office ; that he used the " Blue Line " headings as advertisements, and issued through bills to the east. There was evidence tending to show that the goods were damaged by negligence of one of the roads in the " line," but none tending to fasten the fault upon the defendant, or upon any company in particular. The defendant demurred to the evidence, and the demurrer was sustained.

The first question is whether the respondent is liable as a joint contractor by virtue of the contract made with the appellant. If liable, the respondent may be sued alone, as by our law the contract is joint and several. The bill of lading in evidence does not, upon its face, purport to be the bill of the Boston and Albany Railroad Company. The agreement is to deliver the goods at the depot of the " line," and the statement on the face of the paper is that the contract is made under " joint arrangement " of the connecting roads. The inference, if not the statement, is that the contract is made by the " Blue Line Transit Company." The nature or character of the company was open to evidence by parol, and the question is whether the parol evidence, in connection with the bill of lading, sustained the petition. It is claimed, indeed, by the respondent that the petition does not state a cause of action ; but, from what is said above, it appears that the allegations are sufficient. It is not necessary that the word *partners*, or any particular word, should be used ; nor need the obligations of the joint promisors to each other be set out more fully than they are. The question is whether the companies who made and were members of this association, which is advertised in their bills of lading, and elsewhere, as the " Blue Line Transit Company," or, for short, the " Blue Line," are liable conterminously with the whole route, or only upon their respective lines. It matters little what they are called, yet it is difficult to see, on principle, why they are not partners *quoad hoc*. They have a common interest ;

they engage in common labors, and so make a fund; they put into a common venture their stock, — that is, the use of their motive power, of their cars, of their roads, and the services of their men; they share profits, as profits, in what proportion it does not concern third parties, who pay their freight in gross. Moreover, they hold themselves out to the world as joint adventurers, doing business as a through line, under a peculiar name, which they use in common, and thus, by a mark agreed upon, — a blue color, which attaches even to the print of their paper, — they create an identity distinct from the identity of the individual members. Still further, they have a common agent, whose business it is to adjust their partnership accounts.

It is now well settled that railroad corporations have authority to contract for the transportation of passengers and goods beyond their own lines, and beyond the limits of their respective States; that the power is implied in their general corporate powers. *Muschamp* v. *Railroad Co.*, 8 Mee. & W. 421; *Weed* v. *Railroad Co.*, 19 Wend. 534; *McCluer* v. *Railroad Co.*, 13 Gray, 124; *Nashua Lock Co.* v. *Railroad Co.*, 48 N. H. 339; *Burtis* v. *Railroad Co.*, 24 N. Y. 269; 2 Redf. on Rys., 5th ed., sec. 180. It may be regarded as equally well settled, upon authority, that if several common carriers, having each its own line, associate and form what to the shipper is a continuous line, and contract to carry goods through for an agreed price, which the shipper or consignee pays in one sum, and which the carriers divide among them, then, as to third parties with whom they contract, they are liable jointly for a loss taking place on any part of the whole line. *Barton* v. *Wheeler*, 49 N. H. 25; *Bradford* v. *Railroad Co.*, 7 Rich. 201; *Cincinnati, etc., R. Co.* v. *Spratt*, 2 Duv. 4; *Nashua Lock Co.* v. *Railroad Co.*, 48 N. H. 339; *Quimby* v. *Vanderbilt*, 17 N. Y. 306; *Chouteaux* v. *Leach*, 18 Pa. St. 224; *Boston, etc., Steamboat Co.* v. *Brown*, 54 Pa. St. 77; *Hart* v. *Railroad Co.*, 4 Seld.

37. The recent cases of *Railroad Co.* v. *Androscoggin Mills*, 22 Wall. 594, and *Railroad Co.* v. *Pratt*, 22 Wall. 123, confirm the above positions. In the latter case it was held that the matter in the heading of the way-bill, whether the way-bill were considered as a contract or a statement or admission, was competent evidence as to the nature and extent of the agreement, and that, where there was such evidence tending to prove a through contract, the question was for the jury; and the Supreme Court quotes, with approval, the language used in *Root* v. *Railroad Co.*, 45 N. Y. 524, where the court, speaking of a contract to transport over other lines, says: " Such an undertaking may be established by express contract, or by showing that the company held itself out as a carrier for the entire distance, or received freight for the entire distance, or other circumstances indicating an understanding that it was to carry through."

The agent of the defendant, Smith, who receipted for the freight, when called as a witness, stated that the " Blue Line " was " only a name; " that there was no record of it; and that the defendant exercised its discretion, and was not bound as to rates of freight fixed by the agent Mill. But it was not for a witness to say what the line is, or to what the defendant is bound. By neither the principles nor the policy of the law are common carriers permitted to form an association for reaping the profits of their trade and escaping its legal liabilities. It is further urged that the petition charges that the " Blue Line " was composed of seven roads, while the evidence shows that one of these roads was not in the line. As that one was not the defendant, the error was immaterial.

From what has been said, it follows that the case should have been submitted to a jury. The judgment is reversed and the cause remanded. All the judges concur.