N. K. FAIRBANK & CO. v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court, S. D. Ohio, W. D.   March 15, 1895.)

No. 4,535.

1. DEFINITION—MACHINERY—CAR AXLE.
   The axle of a railroad car is a part of its motive machinery; and an accident caused by the breaking of such axle comes within an exception, in a bill of lading, of "accidents to boilers or machinery."

2. PRACTICE—JUDGMENT AGAINST GENERAL VERDICT.

Where, under the Ohio practice, a jury has found a general verdict, and has also found certain specific facts, in answer to written questions, if the general verdict is erroneous the court cannot direct judgment against it, unless all the facts necessary to support such judgment are expressly found, but can only direct a new trial, though the evidence to support a judgment against the general verdict is undisputed.

This was an action by N. K. Fairbank & Co. against the Cincinnati, New Orleans & Texas Pacific Railway Company to recover damages for the loss of certain oil, shipped over defendant's road. After a verdict for the plaintiff, the defendant moves to enter judgment for it, notwithstanding the verdict.

Ramsey, Maxwell & Ramsey, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, for defendant.

SAGE, District Judge. The plaintiff, a corporation, sues the defendant, as a common carrier, for the recovery of $5,270.53, with interest, the value of four tanks of oil received by the defendant at Chattanooga, Tenn., under an agreement, in consideration of a reasonable reward to be paid, to carry safely for the plaintiff, and to deliver the same to the Louisville Southern Railroad Company, at its point of intersection with the defendant's line for transportation, thence to the plaintiff, at Chicago. The plaintiff avers that the defendant did not safely carry and deliver said goods, but failed to do so, whereby they were wholly lost to plaintiff. The defendant pleads, in substance, the general issue, and, specially, that on the 4th of May, 1889, the East Tennessee, Virginia & Georgia Railway Company engaged, by contracts in writing, for an agreed compensation, with the Southern Cotton-Oil Company, as shipper thereof, to transport for it from Atlanta, Ga., to Chicago, Ill., four tank cars of cotton oil consigned to the plaintiff, being the oil mentioned in the petition. It is set forth in the answer that, in the performance of said contracts, the East Tennessee, Virginia & Georgia Railway Company carried said cars of oil from Atlanta to Chattanooga, Tenn., the terminus of its line of railroad, and there delivered them to defendant, with the request to transport them from Chattanooga over its line, or a part thereof, to its junction with the next connecting carrier, in its line of transportation to Chicago.

It is alleged in the answer that, in the course of transportation from Chattanooga, a car axle of one of the cars composing the train in which said four cars were drawn, without any fault or negligence on the part of the defendant, broke, whereby the train was thrown from the track, and the cars containing the oil were destroyed, and the oil lost.

The defendant further answers that, by the terms of said contracts, it was agreed that neither the East Tennessee, Virginia & Georgia Railway Company, nor any connecting carrier whose line it might employ in effecting the transportation of said oil to Chicago, should be liable for any loss caused by any accident to machinery; that the loss of said oil was solely due to and caused by an accident to certain machinery, to wit, the axle of a car in defendant's

train in which said four tanks of oil were being transported, which axle, without any fault or negligence on the part of defendant, broke down under said car, whereby said four cars of oil, being in the rear thereof, were derailed, and the contents thereof were lost.

The reply puts in issue every allegation contained in the defenses specially pleaded.

For the purpose of dispensing with proof, it was stipulated in writing, at the beginning of the trial, and before any evidence was introduced, that the plaintiff, on or about April 30, 1889, purchased from the Southern Cotton-Oil Company, at Atlanta, the four tanks of oil mentioned in the petition for the sum of $5,270.53, which was paid by the plaintiff to said company, and that said price was a fair and reasonable value of said oil; also, that on or about May 4, 1889, said oil was delivered by the Southern Cotton-Oil Company to the East Tennessee, Virginia & Georgia Railway Company, for transportation, and that said railway issued therefor the bills of lading to which reference will hereinafter be made.    The jury returned a general verdict in favor of the plaintiff, and, to questions in writing submitted to them in accordance with the Code of Procedure of Ohio, answered, in writing: First. That the defendant's freight train, composed in part of four cars containing the oil sued for in this case, was thrown from the track by reason of the breaking of an axle of one of the cars of said train.    To the question whether the broken axle was an axle of any one of said four cars, the jury answered that they disagreed.

They further answered, in response to a third question, that the breaking of the axle was not caused by the fault or negligence of the defendant.    The bills of lading referred to above are in terms through bills of lading.    Each is for a tank of cotton-seed oil consigned to N. K. Fairbank & Co., Chicago, Ill., via the East Tennessee, Virginia & Georgia Railway, Cincinnati, New Orleans & Texas Pacific, Cincinnati, Hamilton & Dayton, and Louisville, New Albany & Chicago Railroads.

It was stipulated, among other things, in each of said bills, that the liability of each carrier, as to goods destined beyond its own route, should be terminated by a proper delivery of them to the next succeeding carrier; that no carrier should be liable for any loss or damage arising from accidents to boilers or machinery; that the bill of lading "is signed for the different carriers who may be engaged in the transportation, severally, not jointly, and each of them is to be bound by and have the benefit of all the provisions thereof as if signed by it, the shipper, owner, and consignee.    The acceptance of this bill of lading is an agreement on the part of the shipper, owner, and consignee of the goods to be bound by all of its stipulations, exceptions, and conditions, as fully as if they were all signed by such shipper, owner, and consignee."    It is also stipulated in the bill of lading that it shall have the effect of a special contract, not liable to be modified by a receipt from or act of an intermediate carrier.    The defendant moves the court to enter judgment in favor of the defendant upon the answers to the special

interrogatories submitted to the jury, or to set aside the general verdict, and grant a new trial, for the reasons assigned in the motion.

The effect of the stipulation above set forth was to withdraw from the issues to be submitted to the jury all the facts stipulated, as effectually as if they had been incorporated in an amendment to the answer. The shipper must be regarded as an agent of the plaintiff in making the contracts set forth in the bills of lading. Those contracts were for the carriage of the oil to Chicago over the lines of railroad mentioned in the bills. They were signed by A. M. Taylor, who testified that he was agent for the East Tennessee, Virginia & Georgia Railway Company at Atlanta, and that, as such agent, it was his business to sign bills of lading for goods shipped over that road. It is urged that there is no testimony tending to show that copies of the bills of lading were delivered to the defendant with the freight or otherwise, or that the defendant had any knowledge of them, or that there was any through traffic agreement between defendant and the East Tennessee, Virginia & Georgia Railway Company, or that that company fixed a through rate of freight, or that the agent of that company had any authority on behalf of any other company. It is true that no one of these facts is testified to by any witness, but the bills of lading specify that they are signed for the different carriers severally, not jointly, and that each is to be bound by and have the benefit of all the provisions thereof as if signed by it, the shipper, owner, and consignee; also, that the acceptance of the bill is an agreement on the part of the shipper, owner, and consignee of the goods to be bound by all its stipulations, exceptions, and conditions as fully as if they were all signed by such shipper, owner, and consignee. The defendant pleads these conditions, which is sufficient evidence of its adoption and ratification of the contract contained in the bill. The plaintiff admits by stipulation that the oil was delivered to the East Tennessee, Virginia & Georgia Railway Company for transportation, and that the bills of lading were issued therefor. It follows that the plaintiff, by accepting the bills, acceded to the limitations therein expressed, and that the defendant is entitled to the benefit of those limitations. The jury found, in answer to the first question put in writing, that the defendant's freight train, composed in part of the four cars, containing the oil sued for in this case, was thrown from the track by reason of the breaking of an axle of one of the cars of said train. To the third question, they answered that the breaking of the axle was not caused by the fault or negligence of the defendant. They disagreed whether the broken axle belonged to one of the tank cars containing the oil shipped to plaintiff. By the undisputed testimony, the loss resulted from the derailment of a car caused by the breaking of an axle. The bills of lading except from the carrier's liability losses resulting from accidents to boilers or machinery. The question then arises whether "machinery" includes the axle of a car. It is contended for the plaintiff that this is not machinery; that the limitation is upon a common-law liability, and therefore to be strictly

construed against the carrier. Counsel argue that taking the clause in which the word "machinery" appears, and considering it as a whole, it is apparent that the exemption is intended to embrace accidents to such parts or machinery as generate or distribute power; that is, machinery in connection with boilers and the transmission of steam power; such as is to be found in the engine room of a steamer. Their contention is that it is to be limited to the bursting of a steam chest in the locomotive, the breaking of a driving  wheel, the bursting of a boiler, the breaking of any of the gearing of the locomotive, and possibly also the breaking of the air brakes which apply their power through valves in the engine. They quote Worcester's definition, as follows: "Mechanical combination of parts for creating or for applying power in engines or machines; machines collectively; the works of the machine; enginery,"—and insist that even this general definition is not broad enough to meet the case at bar; much less such limited and contracted definition as will be given by a court jealous of the attempts of the carrier to exempt itself from the liability attaching by law.

Webster's definition of a machine is: "A construction more or less complex, consisting of a combination of moving parts or simple mechanical elements, as wheels, levers, cams, etc., with their supports and connecting frame work, calculated to constitute a prime mover, or to receive force and motion from a prime mover or from another machine, and transmit, modify, and apply them to the production of some desired mechanical effect or work," etc.

One of his definitions of machinery is: "The means and appliances by which anything is kept in action, or a desired result is obtained." In Chambers' Encyclopaedia, machines are defined to be "instruments interposed between the moving power and the resistance, with a view to change the direction of the force, or otherwise modify it."

In Seavey v. Insurance Co., 111 Mass. 540, it was held that dies intended to be used in a stamping machine, of which there were several hundred, only one pair being capable of use at one time, were all covered by a policy insuring machinery. To the same effect, see Lowber v. LeRoy, 2 Sandf. 202; Com. v. Lowell Gas Light Co., 12 Allen, 75. In Railway Co. v. Brooks, 84 Ala. 140, 4 South. 289, the supreme court said:

"When cars, though used at times, and at other times detached, are formed into a train, to which the propelling force is imparted by means of a locomotive, the entire train constitutes machinery connected with or used in the business."

My conclusion is that the axles of a railroad car, constituting, as they do, an essential part of the appliances by which cars are moved, and without which it would be impossible to use them for the transportation of freight or of passengers, are parts of the motive machinery, and as distinctively machinery as wheels or drivers of a locomotive. It is not within the power of the court to direct a judgment against the general verdict unless the questions and answers, either with or without that verdict, include findings upon all the issues of fact in the case. There is no finding of fact that

the loss of the oil resulted from the breaking of the axle or the derailment of the cars, and, although that was the undisputed evidence, the court cannot proceed to judgment upon it, and must therefore, in accordance with this opinion, set aside the general verdict, and grant a new trial, which is accordingly done.