CASE 68—ACTION FOR INJURY TO CATTLE IN TRANSPORTATION.

# Pittsburg, C. C. & St. L. Ry. Co. v. Viers, &c.

APPEAL FROM HARDIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. AFFIRMED.

CARRIERS OF LIVE STOCK—LIABILITY FOR INJURY ON CONNECTING LINE—RATIFICATION BY CONNECTING CARRIER OF ORIGINAL CONTRACT—VENUE OF ACTION.

Held: 1. As a carrier at common law was under no liability beyond its own line unless it undertook to carry beyond its own line, Const., section 196; providing that no common carrier shall be permitted to contract for relief from its common law liability has no application where a carrier receiving live stock to be transported to a point beyond its own line stipulates that its liability as carrier shall cease at its terminus when the stock is ready to be delivered to the connecting carrier, and such stipulation is therefore valid.

2. Where a connecting carrier receives live stock from the initial carrier or an intermediate carrier without limiting its liability, it must be assumed to have accepted the stock under the terms of the original contract made with the initial carrier on behalf of itself "and connecting lines," and, having thus ratified the contract, may be sued on it in the county in which it was made, as if it had originally signed the contract.

W. H. MARRIOTT, ATTORNEY FOR APPELLANT.

QUESTIONS RAISED AND AUTHORITIES CITED.

The contract between plaintiffs and this defendant below for the transportation of this stock was not made in Hardin county. The stock were not injured in that county, nor did this de-

fendant reside in said county. Therefore, the court had no jurisdiction of the subject matter of the action. Civil Code of Practice, sec. 73; Sherrill v. Railway Co., 89 Ky., 302; Eichhorn v. L. & N. R. R. Co., 65 S. W. Rep., 797.

Party can not give the court jurisdiction by joining a resident defendant against whom no cause of action is stated. Randal v. Shropshire, 4 Metcalf, 327; Stamper v. Central Kentucky Lumber Co., 9 Ky. Law Rep., 175; Fernold v. Speers, 3 Metcalfe, 459.

Nor will the statement of a cause of action against a resident defendant, if it be not proven against such defendant, give jurisdiction of the defendant served in a different county. Meguiar v. Rudy, 7 Bush, 432.

J. P. O. MEARA, FOR APPELLEES.

### QUESTIONS AND AUTHORITIES.

The appellant was a *connecting line* and therefore a party to the contract. 6 Am. & Eng. Ency of Law, 2d ed., 604; Hutchinson on Carriers, 157a; Lawson on Carriers, 342.

The L. & N. was an agent of appellant in making the contract. Nashville, etc. Railroad Co. v. Carrico, 95 Ky., 489.

S. M. PAYTON, ATTORNEY FOR APPELLEES.

A common carrier can not contract for relief against common law liability and the initial shipper is liable for the negligence and default of all intermediate carriers and instrumentalities employed in getting the property to the place of ultimate destination. Sec. 196, Ky. Constitution, 95 Ky., 489; 87 Ky., 632; 21 R., 1647; 93 U. S., 174; bk. 23; p. 872; Lawyers Co-op-el Bank of Kentucky v. Adams, Express Co.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

The appellee shipped 68 head of cattle at Senora, on the line of the Louisville & Nashville Railroad Company, to be transported to Indianapolis. The cattle appear to have been injured in the course of transportation, but not while on the line of the Louisville & Nashville Railroad. Suit was brought by the shippers against the Louisville & Nashville Railroad Company and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company for damages for the injury to the cattle in transportation. The Louisville

& Nashville Railroad Company set up its contract, which contained a stipulation that all liability upon it as a carrier of the stock should cease at its terminus, when the stock should be ready to be delivered to the carrier whose line might constitute a part of the route to destination, denied all injury to the cattle while in course of transportation over its line, and pleaded certain other matters not necessary to be here considered. By reply to the answer of the Louisville & Nashville Railroad Company, the appellees set up section 196 of the Constitution, as avoiding the stipulation against liability for injury to the stock except upon its own line. A demurrer to the reply was sustained, and the petition dismissed, as to the Louisville & Nashville Railroad Company.

The action of the circuit court in sustaining the demurrer of the Louisville & Nashville Railroad Company to the reply was correct. The provision of the contract is not one limiting the company's common-law liability. At common law the carrier was under no liability beyond its own line. Such liability could be created by contract. If so, it was the result of the contract, and was not imposed by the common law. Therefore, whether the company contracted to be liable or to be exempt from liability, the contract was not in reference to any common-law liability, and section 196 of the Constitution can have no application. This was distinctly recognized in Ireland v. Railroad Co. (105 Ky., 400) (20 R., 1586) (49 S. W., 188), where, in an opinion by Chief Justice Hazelrigg, it was said: "It is urged that the clause is an attempted limitation of the carrier's common-law liability, and is therefore void. We do not think so. At the common law, without a contract to the contrary, there was no liability beyond the carrier's own line. About this there is no dispute. The carrier, however,

might contract to carry beyond its own line, and then it became, of course, liable beyond its terminus." And in Railroad Co. v. Tartar (19 R., 230) (39 S. W., 698) it was said· "The general rule is that a carrier is not liable beyond its own line, unless by contract to that effect, express or implied." Elliott, R. R. section 1433; Bryan v. Railroad Co., 11 Bush, 597. To the same' effect is the decision in Railroad Co. v. Cooper (19 R., 1152) 42 S. W., 1134, and United States Mail Line Co. v. Carrollton Furniture Mfg. Co. (101 Ky., 658) ( 19 R., 833) (42 S. W., 342). And see Hutch. Carr., section 149b, and note to Wells v. Thomas, 72 Am. Dec., 231.

The appellant, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, pleaded to the jurisdiction. It also answered, traversing practically all the averments of the petition, except the averment of the contract with the Louisville & Nashville Railroad Company; and a trial was had, resulting in a verdict for appellees for $425, on which judgment was entered.

The principal question presented upon this appeal is as to the jurisdiction of the court. The contention for appellant is that it had no agent or office in Hardin county, where the contract of shipment was made, and that the appellees can not give jurisdiction to the Hardin circuit court of an action against the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company by joining the Louisville & Nashville Railroad Company as a defendant,—it being a resident of Hardin county,—unless it shows a cause of action against the resident defendant. Meguiar v. Rudy, 7 Bush., 432; Fernold v. Speer, 3 Metc., 459; Stamper v. Lumber Co. (9 R., 175) (4 S. W., 330); Eichhorn v. Railroad Co. 112 Ky., 338 (23 R., 1640) (65 S. W., 797). This conten-

tion may be conceded. Under section 73 of the Civil Code, it is provided that an action of this character must be brought in the county in which the defendant, or either of several defendants, resides, or in which the contract is made, or in which the carrier agrees to deliver the property. It therefore follows that as appellant denied residence in Hardin county, and was not to deliver the property in that county, the circuit court did not have jurisdiction, unless, within the meaning of the Code provision, the contract was made in that county; for the cause stands as it would if appellees had sued the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company alone, without joining the Louisville & Nashville Railroad Company as a defendant.

The contract, which is on the form of the Louisville & Nashville Railroad Company, and signed by the agent of the company and by the appellees, begins:

"Received by the Louisville & Nashville Railroad Company the following described live stock, to be transported in accordance with the terms and conditions of the contract entered into below:

| Consignee, Destination, &c. | Description of Stock. | Car No. |
|---|---|---|
| Viers & Patterson % Jeffreys, Kershaw & Co., Union Stock Yards, Indianapolis, Ind. | 68 Cattle | 19,012 19,518 |

"Tariff rate on this shipment from Sonora to Louisville is $32.00 per car.

"Contract for transportation of Live Stock. Sonora, Ky., Station, Dec. 28th, 1899. This agreement, made between the Louisville & Nashville Railroad Company and its connecting lines, of the first part, and Viers and Patterson, of the second part, witnesseth," etc.

Then follows a provision for transportation to Louisville

at the rate of $16 per car, and a release of liability beyond
the Louisville & Nashville Railroad's terminus.

Clause 13 of the contract is as follows: "And it is fur-
ther agreed that, when necessary for said animals to be
transported over the line or lines of any other carrier or
carriers to the point of destination, delivery of such ani-
mals may be made to such other carrier or carriers for
transportation upon such terms and conditions as the car-
rier may be willing to accept; provided, that the terms
and conditions of this bill of lading shall inure to such
carrier or carriers, unless they shall otherwise stipulate,
but in no event shall one carrier be liable for the negli-
gence of another."

Now appellant insists that this contract does not under-
take to cover the transportation of the stock beyond Louis-
ville; that its application is limited to the terminus of the
Louisville & Nashville road at Louisville; that the charges
stipulated did not cover any transportation beyond that
point; that there is no agreement that the stock should go
over the appellant's road; that the agent at Sonora had no
authority to contract for it, and never undertook to do so,
and that no traffic arrangement or agreement existed or was
shown which authorized the Louisville & Nashville Railroad
Company to make a contract of this or any other kind, bind-
ing upon the appellant; that there was no express contract
by the appellant regarding this shipment, but that it re-
ceived the cattle from the Louisville Bridge Company, to
which company they had been delivered by the Louisville
& Nashville Railroad Company, transported them to the
nearest point on its line to the Union Stock Yards, at
Indianapolis, and there delivered them to the Belt Rail-
road Company, which collected from the consignees freight
at the rate of 10 cents per 100 pounds for the trans-

portation over appellant's line; that it received the cattle at Jeffersonville, as a common carrier, for shipment, it should carry the cattle safely to the point on its line nearest to the point of destination, and that appellee should pay the regular tariff rate for such shipment; that this implied contract had no relation whatever to the contract made by the Louisville & Nashville Railroad Company, and was not affected by it; that therefore the contract was not made in Hardin county, and therefore the lower court had no jurisdiction to entertain the action. On the other hand, the appellees rely upon the recital in the contract that it was with the Louisville & Nashville Railroad Company and its connecting lines; that a connecting carrier is one of several carriers whose lines, or parts thereof, unite to constitute a route over which any particular shipment is to pass (Hutch. Carr., section 157); that interrogatory 6, attached to the petition and addressed to appellant, is as follows: "(6) State whether or not on or about December 28th, 1899, you had a traffic arrangement or any business arrangement with the Louisville & Nashville Railroad Company, under which you received freights brought into Louisville by it, destined and consigned to points along your lines north of the Ohio river; and, if so, state the nature of that arrangement, and state also whether this stock was received and transported by you under a general arrangement, or whether you made a special contract as to the transportation and delivery of these cattle?" To which appellant made the following response: "This defendant has no such arrangement with said company. Without any special or explicit arrangement, it receives traffic of said company, all of which must pass over the intervening tracks and bridge of the Louisville Bridge Company, and pay toll to that company. The stock in

question came to this defendant from the Louisville Bridge
Company, like any other shipment from a connecting car-
rier, destined to points on this defendant's lines, with-
out any previous arrangement or understanding or contract
that it should do so; and this defendant never, until it
received said stock at Clarksville, was under any obligation
or contract respecting it. When it received the stock it
undertook to perform the duties of a carrier of live stock
in transporting the stock to Indianapolis."

Appellees contend that this response shows a ratifica-
tion of the contract made for the connecting lines by the
Louisville & Nashville Railroad Company in Hardin coun-
ty, and that this ratification is the equivalent of a pre-
vious direction, and renders appellant liable upon the
written contract as made in Hardin county. In support of
this contention, the case of Railroad Co. v. Carrico, 95 Ky.,
489 (16 R., 66) (26 S. W., 177) is relied on. In that case it
appeared that the contract was made with the Louisville
& Nashville Railroad Company, "which undertook to trans-
port the animals to Nashville, Tennessee, to be carried
from there by the latter company [the Nashville, Chatta-
nooga & St. Louis Railway Company], which appears to
either own, or have in its possession and control, a con-
tinuous line of railway to Atlanta. It is, in substance,
alleged that the Nashville, Chattanooga & St. Louis Com-
pany agreed to transport appellant's mules from Nashville
to Atlanta, receiving therefor a proportion of the whole
amount fixed in the contract with the Louisville & Nash-
ville Company for the whole distance, but, by negligence of
its agents in operating the train on which the animals
were placed, they were greatly injured." The action was
dismissed as to the Louisville & Nashville Railroad Com-
pany, and the same question arose which is presented here,

under section 73 of the Civil Code.  In that case the court
states that the Louisville & Nashville Railroad Company,
in making the contract, was acting as the agent of the
other company.  It was there said: "But it seems to us
the   contract in this case, having been made in Marion
county by the Louisville & Nashville Railroad Company,
acting as appellant's agent, must, in the meaning of that sec-
tion, be regarded as made there by appellant itself. . . .
The record, in our opinion, shows the existence of each of
the conditions of jurisdiction of the Marion circuit court,
and validity of a service of summons prescribed by the
Civil Code." So, in the case of Railroad Co. v. Tabor (17
R., 569) (32 S. W., 168) it was assumed by the court that the
company which made the contract of shipment made it
"under authority from appellant to contract for the carry-
ing of the cattle over appellant's line." In United States
Mail Line Co. v. Carrollton Furniture Mfg. Co. (101 Ky.,
658) (19 R., 833) (42 S. W., 342) the English rule as to the
liability of connecting carriers is discussed, and stated to
be based upon the ground of want of privity of contract
between the injured party and the connecting carrier; and,
in denying the application of the English rule, Hutch. Carr.,
section 150, is quoted with approval, as follows: "And
the mere fact that the auxiliary carrier acts in the trans-
portation as the agent of the contracting carrier, and that
there is no privity of contract between him and the owner
of the goods, furnishes no legal reason why he may not
be held liable to the owner for any loss which may arise
either from negligence or misfeasance." And in the case
of Ireland v. Railroad Co. (105 Ky., 400) (20 R., 1586) (49
S. W., 188), the court is careful to state that "the connect-
ing line, having entered its appearance, it also liable to
the owner, if the damage occurred on its line."

These seem to be all the cases in this State which bear even remotely upon the question here presented. The question here presented for decision has therefore never been decided in this State. While, as an original proposition, it would seem that a contract, though made, in terms, not only for the benefit of the parties thereto, but for the benefit of a third person would neither bind nor benefit such person in the absence of an acceptance of its provisions, and that the mere receiving of goods by a connecting line, without anything to show information of the terms of of the contract made with the initial carrier, should not be held to be an acceptance of the terms of such contract, because the law requires the connecting carrier to so receive the goods, and what is done in obedience to a legal requirement ought not to be construed to create any implied contract, other than that which the law implies, the current of authority has led us to a different conclusion. It may be conceded, however, that there is considerable authority for the proposition that there is no implied contract other than that created by the law from the receipt of goods for transportation by a common carrier, whether such receipt is required by statute, or by the provisions of the common law.  Railroad Co. v. Dwyer, 75 Tex., 572, 12 S. W., 1001, 7 L. R. A., 478, 16 Am. St. Rep., 926.  Same v. Baird, 75 Tex., 256, 12 S. W., 667.  And this has been held with special reference to the rate of freight contracted for by the initial carrier, which is held not binding, without showing some privity between the two carriers, or a knowledge of the contract on the part of the connecting line. Wells v. Thomas, 27 Mo., 17, 72 Am. Dec., 229.  See, also, note to this decision on page 242.  And see Lawson Carr., section 244; Express Co. v. Harris, 120 Ind., 76, 21 N. E., 340, 7 L. R. A., 214, 16 Am. St. Rep., 315; Bancroft v.

Transportation Co., 47 Iowa, 262, 29 Am. Rep., 483. As might be expected, most of the cases which bear upon this question arise upon claims of connecting carriers to the benefit of provisions of contracts with the initial carrier. It is quite difficult at times to determine the reason for the distinction made in the cases. As matter of course, if the contract is held binding upon the connecting carrier, the stipulations must inure to its benefit. The obligation of the contract must be reciprocal. If the carrier is a party to the contract, and therefore bound under the contract, it must have the advantage of the stipulations which limit its liability, unless such limitation is forbidden. The carrier's liability in such case is deduced from its ratification of the original contract. In this case, the Louisville & Nashville Company made the contract of shipment. It contracted on behalf of itself and connecting carriers, without stipulating what carriers should complete the transportation to the point of destination. It limited its own liability to such damages as should occur upon its own line. It also undertook to further limit its liability, and the contract provides that such limitations should inure to the benefit of connecting carriers. Although it is not shown that the Pittsburg, Cincinnati, Chicago & St. Louis Company had knowledge of these provisions, it must be charged with knowledge that the Louisville & Nashville Company received the cattle under some contract. Though, so far as the record shows, it did not know the terms of that contract, it could have ascertained them, or it could have limited its own liability by the terms of the receipt which it gave for the cattle to the intermediate carrier, the Louisville Bridge Company, which received them from the Louisville & Nashville Company's terminus, and delivered them to the Pittsburg, Cincinnati, Chicago & St. Louis

Company.  Having received the cattle without any such
limitation, we are of opinion that, under the authorities,
it must be assumed to have accepted them under the terms
of the original contract.  The ratification was the ratifi-
cation of the contract made in Hardin county.  It bound
the shipper as if it had been signed in Hardin county by
him and by the connecting carrier.  When ratified, it bound
the connecting carrier as if it had been there signed by it
or its agent, and it became a contract made in Hardin
county between appellees and the Pittsburg, Cincinnati,
Chicago and St. Louis Railway Company.  In Elliott, R. R.
section 1446, the general doctrine is thus laid down, and a
number of authorities cited: "If a connecting railroad
company is designated as such in the initial carrier's bill
of lading, or if the bill provides that all stipulations shall
inure to the benefit of all the carriers, then, having accept-
ed the goods thereunder without any separate agreement,
it becomes virtually a party to the contract, bound by the
undertakings therein, and benefited by the limitations.  If,
however, the connecting carriers are not designated, but
are left to the initial carrier's selection, and there is no
provision that the stipulations shall inure to the benefit of
any other carrier, the connecting carrier may not claim
the benefit of the original contract, and when it accepts
the goods, it does so under the law.  So, where the con-
necting carrier, on receiving the goods, gave a receipt con-
taining definite provisions, it was held that it thereby lost
the right to avail itself of provisions for its benefit in the
receipt given by the first carrier.  And it has also been
held that a connecting carrier can not be considered as
ratifying the original contract, where, in receiving and
transporting the goods, it merely does what a valid stat-
ute requires it to do."  In Halliday v. Railway Co., 74

Mo., 159, 41 Am. Rep., 311, it was said: "When a carrier undertakes to transport to a point beyond the terminus of its own line, or to a point not on its line, it will be responsible, according to the terms of the contract of shipment, if it contain no prohibited exemptions, for loss or injury occurring upon the connecting lines, as well as upon its own line; and the connecting carrier will also be responsible to the shipper for its own fault or negligence, and according to the terms of the shipper's contract with the contracting carrier. The connecting carrier, by receiving the goods from the contracting carrier, becomes its agent for the purpose of completing its contract with the shipper: and where, as in this case, the contract of the shipper contemplates the employment of connecting lines, the law will imply from this circumstance sufficient privity between the shipper and the connecting carrier to enable the shipper to maintain an action against such carrier on the contract. . . . By simply accepting the stock from the receiver, Bond, to be transported to St. Louis, the defendant became entitled to claim the benefits of all valid exceptions he had made with the shipper. Lawson Carr., section 243." And in Express Co. v. Harris, supra, the court, distinguishing the case before it, said: "If the appellant had been designated in the contract with the first carrier as one of the intermediate carriers, or if the contract had provided that its stipulations should inure to the benefit of all the carriers, then the contention of the appellant would find strong support from the authorities. Express Co. v. Harris, 51 Ind., 127; Railroad Co. v. Weakly, 50 Ark., 397, 8 S. W., 134, 7 Am. St. Rep., 104; Halliday v. Railway Co., 74 Mo., 159, 41 Am. Rep., 309; Evansville & C. Railroad Co. v. Androscoggin Mills, 22 Wall., 594, 22 L. Ed., 724; Maghee v. Transportation Co., 45 N. Y., 514, 6 Am.

Rep., 124; Lamb v. Transportation Co., 46 N. Y., 271, 7 Am. Rep., 327." And see, also, Evansville & C. Railroad Co. v. Androscoggin Mills, 22 Wall., 594, 22 L. Ed., 724; Fairbank v. Railway Co. (C. C.), 66 Fed., 471. In Railroad Co. v. Weakly, 50 Ark., 397, 8 S. W., 134, 7 Am. St. Rep., 111, it was held: "The appellant, by receiving the stock, became their agent to complete their contract to the extent of shipping the stock over so much of its road as formed a part of the route over which the shipment was to be made. From this fact the law implied a privity between the parties to this action sufficient to enable appellees to sue appellant for any losses sustained by reason of its failure to perform the contract, and gave to appellant the benefit of all valid limitations contained in the agreement upon the carrier's liability. So that, while the burdens were imposed, the benefits of the limitations in the contract inured to appellant. Taylor v. Railroad Co., 39 Ark., 148-158; Halliday v. Railway Co., 74 Mo., 159, 41 Am. Rep., 309, 6 Am. & Eng. R. Cas., 433; Hutch. Carr., sections 251, 252, 254, 256."

For the reasons given, the judgment is affirmed

Whole court sitting.

Petition by appellant for rehearing overruled.