CASE 52—ACTION FOR DAMAGES AGAINST CARRIER—JANU-
ARY 24, 1899.

# Ireland v. Mobile and Ohio R. R. Co., Etc.

APPEAL FROM BALLARD CIRCUIT COURT.

1. COMMON CARRIERS—THROUGH BILL OF LADING.—A covenant to
   carry beyond its own line and deliver to the consignee at the
   terminus is imported by a bill of lading issued by a carrier and
   containing these stipulations:

                                        "Wickliffe, June 1, 1895.

   "Received from J. M. Ireland the following packages (contents
   and value unknown), in apparent good order, consigned and
   marked as numbered in the margin, to be transported by the
   Mobile & Ohio R. R. Co., to —————— and thence by steam-
   boat, railroads, and forwarding lines, with which it connects,
   to Louisville, Ky., upon the following conditions:

   "That the said Mobile & Ohio R. R. Co. and the steamboats,
   railroad companies, and the forwarding lines, with which it
   connects and which receive said property, shall not be liable

for leakage of oils, or any kind of liquid breakage, or any kind of glass, earthen or queensware. ————————

"It is further stipulated and agreed that in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during the transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held responsible therefor in whose actual custody the same may be at the time of the happening of such loss, detriment or damage. ——————————."

2. SAME.—A carried issuing a through bill of lading becomes liable for any injury to the goods in transit whether such injury occurs on its own or a connecting line.

(JUDGES BURNAM AND DuRELLE DISSENTING.)

BUGG & WICKLIFFE FOR APPELLANT.

1. The bill of lading was a through one and the attempt to limit the liability was a violation of sec. 196 of the Constitution. Owens v. L. & N. R. R. Co., 9 S. W. R., 700; 16 S. W. R., 775.

2. The court erred in instructing the jury on the question of jurisdiction. The appearance of the C., O. & S. W. R. R. Co. was entered.

EDWARD W. HINES FOR THE APPELLEE, THE MOBILE & OHIO R. R. Co.

1. A contract by a common carrier for the shipment of goods consigned to a point beyond its own line, which provides that such carrier shall not be liable for loss or damage occurring on a connecting line, does not violate sec. 196 of the Kentucky Constitution providing that common carriers shall not contract for relief from their common law liability. L. & N. R. R. Co. v. Tarter, 19 Ky. Law Rep., 229; Michigan Central R. R. Co. v. Myrick, 107 U. S., 102; Muschamp v. Lancaster, &c., R. R. Co., 3 M. & W., 423; Tylor v. Maine Cent. R. R. Co., 87 Maine, 301; Richerson, &c., v. G. R. & T. R. Co., 67 Mich., 117; McCann v. Eddy, 133 Mo., 62; Demmitt v. Railroad Co., 103 Mo., 433; Ohio & Miss. R. R. Co. v. Tabor, 98 Ky., 503; Miller Grain & Elevator R. Co. v. Union Pac. R. R. Co., 40 S. W., 894; Richmond, &c., R. R. Co. v. Richardson, 19 Ky. Law Rep., 1495.

2. On the question of construction of the bill of lading. Waddy Blue Grass Creamery Co. v. Davis, Rankin Bldg. Mfg. Co., 20 Ky. Law Rep., 259.

[ 26 ]

P. H. DARBY on the same side. (No brief in the record.)

LANSDEN & LEEK for the appellee. (No brief in the record.)

LANSDEN & LEEK on same side in a petition for a re-hearing.

1. On the construction of the bill of lading. Minter v. Southern Kansas R. R. Co., 56 Mo. Appeals, 282; Phillips v. N. C. R. R. Co., 78 N. C., 294; Myrick v. the M. C. R. R. Co., 107 U. S., 102; Elliott on Railroads, sec. 1436; Hill v. G. C. & N. R. R. Co., 43 S. C., 461; 21 South Eastern Rep., 337.

2. On construing the ambiguity unfavorably to the carrier. Myrick v. M. C. R. R. Co., 107 U. S., 102; 6 Am. & Eng. Enc. of Law 2d ed.), 615, 632, 633, 634, 635, 636.

3. Through bills of lading. Muschamp v. L. & P. J. R. R. Co., 8 M. & W., 421; Hutchinson on Carriers, sec. 146; Lawson on Carriers, sec. 239; Miller Grain & Elevator Co. v. Pac. Ry. Co., 138 Mo., 658; 40 S. W. R., 894; Bird v. the Southern Railway Co., 42 S. W., 451; McCann v. International & G. N. R. R. Co., 84 Tex., 352; 19 S. W., 547; L. & N. R. R. Co. v. Tenn. Brewing Co., 36 S. W., 392; Wichita Valley Ry. Co. v. Swenson, 25 S. W,. 47; Galveston, H. & S. A. Ry. Co. v. Short, 25 S. W., 142; R. N., I. & B. R. R. Co. v. Richardson, 43 S. W., 465; L. & N. R. R. Co. v. Cooper, 42 S. W., 1134; L. & N. R. R. Co. v. Tarter, 39 S. W., 68; Dimmett v. Kansas City, &c., R. R. Co., 103 Mo., 433; 15 S. W., 761; Nines v. St. L., I. M. & S. Ry. Co., 107 Mo., 475; 18 S. W., 26.

4. Elliott on Railroads, 1439; Lawson on Carriers, secs. 236, 238, 239; Mobile & Ohio R. R. Co. v. Frances, 9 Southern Rep., 508.

EDWARD W. HINES for the appellee, in a supplemental petition for rehearing, cited: Cincinnati, &c., Ry. Co. v. Fairbanks, &c., 90 Fed. Rep., 467.

JUDGE HAZELRIGG delivered the opinion of the court.

his action was brought by the appellant against appellees, the Mobile & Ohio Railroad Company and the Chesapeake, Ohio & Southwestern Railroad Company for damages to three hogsheads of tobacco shipped under the following contract:

"Bill of lading. Mobile & Ohio R. R. Co.

"Wickliffe, June 1, 1895.

"Received from J. M. Ireland the following packages (contents and value unknown), in apparent good-order, con-

Ireland v. Mobile & Ohio R. R. Co., Etc.

signed and marked as numbered in the margin, to be trans-
ported by the Mobile & Ohio R. R. Company to ————,
and thence, by steamboat, railroads, and forwarding lines
with which it connects, to Louisville, Ky., upon the follow-
ing conditions: That the said Mobile and Ohio R. R. Com-
pany, and the steamboats, railroad companies, and the for-
warding lines with which it connects, and which receive
said property, shall not be liable for leakage of oils or
any kind of liquid, breakage of any kind of glass, earthen
or queensware. . . . It is further stipulated and
agreed that in case of any loss, detriment, or damage done
to or sustained by any of the property herein receipted
for during the transportation, whereby any legal liability
or responsibility shall or may be incurred, that company
alone shall be held responsible therefor in whose actual
custody the same may be at the time of the happening of
such loss, detriment, or damage. . . .

"Notice. In accepting this contract, the shipper, or
other agent of the owner of the property carried, expressly
accepts and agrees to all its stipulations and conditions.

"Consigned to Green River House.

"At Louisville, Ky.

"Weight and classification subject to corrections.

"List of Articles.

"Weight subject to corrections.

"Three hogsheads tobacco.                          2725.

"O. K.   Dishon."

At the end of some five or six days, when two days ought
to have sufficed, the tobacco was delivered at its destina-
tion in a badly damaged condition. The appellant's suit
on account of this was dismissed by the court because it
was not shown where the damage occurred,—whether on
the initial road, or of the connecting carrier.

In the contemplation of the parties, as alleged in the

pleadings, the tobacco was to be shipped to Rives, the terminus of the Mobile & Ohio road, and thence it was to be transported over the Chesapeake, Ohio & Southwestern to Louisville. And it is the contention of appellant that the proper construction of the initial carrier's undertaking is that it would transport the tobacco to Rives on its own line, and thence over its connecting line, the Chesapeake, Ohio & Southwestern, to Louisville. We think the contract is fairly susceptible of this construction. The receiver of the tobacco contracted, by the aid of two agencies, instrumentalities, or carriers, to transport the tobacco to the Green River House, in Louisville. One of the agencies is its own track; the other, its connecting track. It is true, the contract may be construed otherwise. It may mean, that the receiving company merely undertook to carry the tobacco to Rives, and there to turn it over to its connecting line for further carriage. But we do not see that this construction has any advantage, in perspicuity or reasonableness, over the other. If the contract is ambiguous, the carrier must put up with the construction most favorable to the consignor. We construe the contract, therefore, as providing for a through shipment by the initial carrier, the connecting line being merely its agent to carry out the undertaking to deliver the tobacco at its destination. When the contract is so construed, the first taker can not limit the liability of its agent for the safe carriage of the goods any more than it can limit its liability on its own line; for a restriction of its agent's liability is a restriction of its own. However, we are referred to the clause limiting responsibility for loss to the carrier in possession as conclusively showing that the contract was not a through shipment. This might be quite forceful, but for the historical fact that these limitation clauses are now,

and have always been, in use as attempted limitations on the carrier's liability even when the shipment is solely over its own line. There is an illustration of this in the contract before us. The carrier attempts to limit its liability for leakage, breakage, etc., on its own line and connecting lines, without reference to its own negligence or that of the connecting line. The books are full of such attempts, and in the same form in which we find it here. Instead of being indicative of a contract of shipment terminating at Rives, we regard the insertion of this limiting clause as showing a knowledge or concession on the part of the first carrier of its liability as a through shipper. If, by the terms of the contract, liability ceased at Rives, why provide against a liability beyond that point? We regard the limiting clause here as the ordinary effort of the carrier to provide against its own by providing against its agent's liability, and must therefore hold it to be ineffectual, as against public policy.

It is urged that the clause is an attempted limitation of the carrier's common-law liability, and is therefore void. We do not think so. At the common law, without a contract to the contrary, there was no liability beyond the carrier's own line. About this there is no dispute. The carrier, however, might contract to carry beyond its own line, and then it becomes, of course, liable beyond its terminus. A difference has arisen as to what shall be deemed sufficient evidence of such a contract on the part of a carrier to ship beyond its own line. In England it is said the mere receipt of goods consigned to a point beyond its own terminus is sufficient evidence to warrant the conclusion that the shipment is a through one. The American rule is said to be otherwise. In view of our construction of this contract, this question need not be discussed further.

We are of opinion that the receiving company is liable for damage occurring anywhere on either road between Wickliffe and Louisville; and the connecting line, having entered its appearance, is also liable to the owner, if the damage occurred on its line. The judgment is reversed for proceedings consistent with this opinion.

JUDGE BURNAM DELIVERED THE FOLLOWING DISSENTING OPINION, IN WHICH JUDGE DuRELLE CONCURRED; JUDGE WHITE NOT SITTING.

Appellant alleges that he contracted with the defendant the Mobile & Ohio Railroad Company to transport three hogsheads of tobacco from Wickliffe to Louisville, Ky., over its road, by way of its connections, and that defendant the Mobile & Ohio Railroad Company delivered the tobacco to its co-defendants, the Chesapeake, Ohio & Southwestern Railroad Company, at Rives, Tenn., the point of intersection of the two roads; that it was due to arrive at its destination on the 2d, but did not arrive there until the 6th day of June, having been unnecessarily delayed in transit four days; that the market price of the tobacco materially declined during this interval; and that, by reason of the negligence and carelessness of both defendants, the tobacco was permitted to become wet while in their possession, and thereby greatly injured and damaged.

Defendant, Mobile & Ohio Railroad Company, says that by its bill of lading it agreed with the plaintiff to carry the tobacco from Wickliffe to Rives, and there deliver it to the Chesapeake, Ohio & Southwestern Railroad, to be carried by the latter company from the point of intersection to Louisville, and that it did so carry and deliver the tobacco to its co-defendant, in the same condition in which it was received, without delay, and relies upon the following provision of the bill of lading as limiting its liability:

"In case of any loss, detriment, or damage done to or sustained by the property during transportation, whereby any liability or responsibility shall or may be incurred, that company shall alone be held responsible therefor in whose actual custody same may be at the time of said loss, detriment, or damage."

The Chesapeake, Ohio & Southwestern filed answer, denying negligence on its part. On the trial the testimony entirely failed to show which company was at fault, or in whose custody the tobacco was at the time it was allowed to get wet. Under this state of case, the court below held that the bill of lading, which is the contract between the parties, was not a contract for a through shipment by the Mobile & Ohio Railroad Company over its own line; that, by its terms, that company limited its liability to such damages as might occur while the property was in its custody, which it had a right to do; that the burden of proof was upon the plaintiff to show either that both of defendants were negligent, and that the injury resulted from the negligence of both, or to show which of the two defendants was the negligent party, and that, failing to do either, he could not recover.

On appeal the judgment of the lower court was reversed by this court, in an opinion written by the Chief Justice, a majority of the court holding that the receiving company is liable for any damage occurring anywhere between Wickliffe and Louisville.

It seems to me that the contract of shipment shows plainly that the Mobile & Ohio was simply to transport the goods to the end of its own line, and then to act merely as a forwarder; and its duty in the latter capacity was discharged when the freight was delivered to the forwarding line. The undertaking on the part of the initial com-

pany is, in substance, that that company should be held liable for any injuries in whose custody the property was at the actual time of the injury. There does not seem to me to be any room to doubt that the parties to this contract necessarily intended by that stipulation that the initial carrier was to be held responsible only in the event that the property was injured while in its actual custody, and that every succeeding carrier should be responsible only in the same event.

Nothing is better settled than that the liability of a carrier beyond its own line is purely a matter of contract. In England, where a carrier receives goods directed to a destination beyond its own route, it is presumed to undertake, by the act of acceptance, in the absence of an express contract upon the subject, the transportation to the ultimate destination, the liability depending upon the implied contract. If the implication is rebutted by an express contract to the contrary, no liability will exist on the part of the initial carrier beyond its own line. And, while this English doctrine of raising an implied contract on the part of the initial carrier to carry beyond its own line by the mere fact of the acceptance of the goods directed to a destination beyond its own line has been accepted by some of the American courts, the great majority of them hold that there is no liability upon a carrier to carry beyond its own line, unless it specially contracts to do so. See 6 Am. & Eng. Enc. Law (2d Ed.), 611, and Hutchinson on Carriers, Sec. 147.

The opinion says "that the contract is susceptible of two constructions, either of which may be taken, and in neither of which appears more clearly the intention of the parties than in the other." I do not think the contract is susceptible of this criticism. The stipulation is "that in case of loss, detriment, or damage sustained by any prop-

erty receipted for herein during transportation, whereby any legal liability or responsibility shall or may be incurred, that company shall alone be held responsible in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage."

It is conceded in the opinion that, in contemplation of the parties (and as alleged in the pleadings), the tobacco was to be shipped to Rives—the point of intersection of the two roads—by the Mobile & Ohio, and was thence to be transported over the Chesapeake, Ohio & Southwestern to Louisville. The only question is, what was the intention of the parties to the contract? Did the Mobile & Ohio undertake to carry the tobacco throughout the whole route at its own risk making the other line merely its agent for that purpose, or did it undertake to transport the freight to the end of its own line, and thence forward it over those of connecting carriers? A carrier may contract for a liability throughout the entire journey, or it may stipulate that it shall not be liable for loss not occurring on its own line. At common law no carrier was bound to accept goods for carriage beyond the terminus of its own line. See Hutchinson on Carriers, sec. 145. It is therefore not a question of power, but a question of the intention of the parties as to what the original contract contemplated; and it is scarcely reasonable to presume that the initial company would voluntarily assume any unusual responsibility. It therefore seems to me that the court is wrong when it accepts that construction of the contract which imposes such risks upon a railroad company, and it is clearly against the weight of authority.

The opinion says that, "if the contract is ambiguous, the carrier must put up with the construction most favorable to the consignor." But when the contract under consideration is such that where one construction would impose no more than the usual and natural duties which fall upon

railroad companies, and another construction would impose upon it unnecessary and unusual risk, the court should make the contract accord with the usual custom in such cases.

In Myrick v. Railroad Co., 107 U. S., 102, [1 Sup. Ct., 425], the Supreme Court says: "The general doctrine as to transportation on connecting lines approved by this court, and also by a majority of the State courts, amounts to this:  That each road is only bound, in the absence of a special contract, to safely carry over its own road, and safely deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend.  In the absence of a special agreement to that effect, such liability will not attach; and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory proof."  The same rule was laid down in Penna. Railroad Co. v. Jones, 155 U. S., 333.  [15 Sup. Ct., 136], and this has been uniformly the construction put upon such contracts by the Kentucky courts.

In Bryan v. M. & P. Railroad Co., 11 Bush, 597, the general rule is thus stated: "The carrier, unless bound by special contract, is required to transport and deliver the freight at the terminus of his line, or at the place where, by the established usage of the business in which he is engaged, the delivery is to be made, to be transported on other lines or by a different carrier."

In L. & N. Railroad Co. v. Tarter, [39 S. W., 698], opinion being delivered by Judge Hazelrigg, the court held the general rule to be:  "A carrier is not liable beyond its own line unless by contract to that effect, express or implied,"—citing Bryan v. M. & P. Railroad Co., *supra*, and

Elliott on Railroads, Sec. 433; the opinion continuing:
"It is held in most of the courts that a mere accept-
ance of goods directed to a point off the carrier's
line is not a sufficient basis for the implication of a
contract for extraterminal liability; but, whether so or
not, it has never been held that such liability ex-
isted in the face of a contract to the contrary. This
is not a case of attempted limitation of liability for
negligence; hence the cases cited by appellee do not apply,"
—citing Elliott on Railroads, Sec. 1435. The section refer-
red to by the court says: "The vast array of authorities as-
serts the general rule to be that *a carrier is not liable beyond
its own line, unless by contract.*" The case of L. & N. Rail-
road Co., v. Cooper, 19 Ky. Law Rep., 1152, [42 S. W.,
1134], was a suit for damages against a railroad com-
pany for failing to deliver a lot of mules shipped
at Lynnville, Tenn., for Atlanta Ga. The answer of
the company denied undertaking on its part to trans-
port and deliver the mules at Atlanta, the answer
going on to state that, by special contract, the appellant
was only to transport the mules to Birmingham, Ala., which
was the terminus of its road, and to be responsible only
for damages from their receipt by appellant to their deliv-
ery to the connecting line, at Birmingham. Appellee con-
tended that he had made a verbal contract for through
carriage. The court held that there was no evidence to sup-
port the shipper's contention for a special contract to carry
to Atlanta, quoting with approval Bryan v. M. & P. Rail-
road Co., and adding: "It seems to us that the testimony
of plaintiff fails to show that there was a special contract
made with appellant, by which it undertook to deliver the
mules in Atlanta. It is therefore unnecessary to determine
as to the validity of the written contract relied on, for the

reason—in the absence of a special contract to deliver at Atlanta—that appellant is not liable for injury to the mules sustained after their delivery by appellant to the connecting line at Birmingham." In the light of these decisions, we are bound to conclude that, if there had been no contract, the initial carrier would not have been liable beyond its own line, even though the goods were destined to an extraterminal point; and it seems to me to be untenable and illogical to say that defendant could not be held liable in the absence of a contract, express or implied, as to liability for injuries resulting beyond its own line, but that it can be made liable where the contract of shipment contains an express provision to the contrary.

The opinion, speaking of this contract for exemption, says: "Instead of being indicative of a contract of shipment terminating at Rives, we regard the insertion of this limiting clause as showing a knowledge or concession on the part of the first carrier of its liability as a through shipper. If, by the terms of the contract, liability ceased at Rives, why provide against liability beyond that point?" The opinion reaches the conclusion that an express stipulation against liability puts the company in a worse position than it would have been if it had left the question open. Is this sound and rational reasoning?

It is the contention of counsel for appellant that the contract of shipment in this case is in contravention of section 196 of the Constitution, which provides that "no common carrier shall be permitted to contract for relief from its common-law obligation."

At common law it is the duty of a common carrier to carry safely, unless prevented by the act of God or the public enemy, from one point on its line to another point on its line, but not a point beyond its line;

and this duty is imposed by the law itself, and is wholly independent of any contract. There is no obligation imposed by the common law upon a carrier to carry beyond its own line. Such obligation can arise only upon a contract, either express or implied; and the extent of such obligation must depend upon that contract. If the contract is implied or if it is an express contract to carry, without any stipulation as to the character or extent of the liability, then the presumption might be that the carrier assumed, by its contract beyond its own line, the same liability which the common law imposed upon it for the carriage over its own line. That, however, would be merely a construction of the contract, and could not override an express provision in the contract to the contrary. Section 196 of the constitution does not extend the common-law liabilities of common carriers, but simply provides that they shall not, by contract, restrict liabilities for obligations imposed thereby.

If the Mobile & Ohio Railroad Company had expressly contracted to carry this tobacco to Louisville, the stipulation as to liability for one loss occurring on connecting lines would have relieved it from liability, as the obligation to carry beyond the end of its own line would exist solely by reason of the contract. In making such a contract, it would have been doing something which the law did not require it to do, and its liability in the performance of the obligation so voluntarily assumed must be measured by the terms of the obligation. No liability at all would exist but for the contract.

In my opinion, the construction given the contract of shipment by the Chief Justice is unsound and utterly untenable; and, considering the importance of the question, I have felt constrained to present my views dissenting therefrom.