CASE 7—ACTION BY S. D. CHESTNUT & BRO. AGAINST THE L. & N. R. R. CO. AND OTHERS TO RECOVER DAMAGES FOR NEGLIGENCE IN SHIPPING TURKEYS.—MARCH 4.

# Louisville & N. R. R. Co. and Others v S. D. Chestnut & Bro.

## APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND CERTAIN DEFENDANTS APPEAL. RE-VERSED.

NEGLIGENCE OF CONNECTING CARRIER—LIABILITY OF RECEIVING CARRIER —BILL OF LADING—CORPORATION—SERVICE OF PROCESS—APPEAR-ANCE BY APPEALING.

Held:   1. Where a contract between a carrier receiving goods for transportation beyond its lines and the shipper provides that the agreement is between the shipper, the carrier, and the connecting lines, and that no line shall be liable for the negligence of any other, and that the car in which shipment is made may be trans-ferred to all necessary connecting lines, the receiving carrier is not liable for any negligence of other carriers.

2. Civ. Code Prac. section 51, subsecs. 3, 4, provide that, if defendant operates a railroad, summons may be served on its passenger or freight agent stationed at or nearest to the county seat of the county where suit is brought. HELD, that the phrase "passenger or freight agent," etc., refers to a person in the service of de-fendant, and stationed by it at some point, and hence, in an action against the last of several connecting carriers by a shipper for negligence in transporting goods, service on the agent of the first carrier is insufficient.

3. Where the service of process is insufficient to give the court juris-diction, but defendant appeals to a reviewing court, it is, in ef-fect, a general appearance in the action.

B. D. WARFIELD, PERKINS & TRIMBLE AND EDWARD W. HINES, FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. The summons against the Chicago & Eastern Illinois Rail-road Company should have been quashed.

The uncontroverted facts show that the C. & E. I. R. R. Co. had no agent in this State, no line of road touching this

44 KENTUCKY REPORTS. [Vol. 115

Louisville & N. R. R. Co. and Others v. S. D. Chestnut and Bro.

State, and never at any time did any business in this State, and the return of the officer on the process shows that it had no agent in this State.

2. The plea in abatement of the C. & E. I. R. R. Co. should have been sustained, which alleges that it was a foreign corporation organized under the laws of Illinois and Indiana and its line of road and all its business was entirely within said two States.

3. The demurrer of the C. & E. I. R. R. Co. to the petition and amended petition should have been sustained, as the written contract sued on which the plaintiff was required to file with its amended petition, shows that no such contract as is set out in the pleading was ever made and that said company was not a party thereto.

4. The third paragraph of the plaintiff's reply was a departure from the cause of action set out in the petition.

The petition sets out a partnership and agency of the three roads, for and with each other, to carry the poultry from Trenton, Kentucky, to Chicago, Illinois, upon which issue is formed; then plaintiffs by reply allege that the L. & N. in making the contract claimed to be the agent for the other two roads for that purpose and that these two roads were the connecting lines referred to in the contract.

5. The court erred in permitting the plaintiffs, by parol proof, to contradict, vary, and add to, the written contract sued on, when there was no allegation in the pleadings of fraud or mistake in its execution.

6. The peremptory instruction asked for by the L. & N. R. R. Co. at the conclusion of the plaintiff's testimony should have been given.

7. The instructions given by the court to the jury are erroneous.

8. The damages awarded by the jury are excessive.

9. The verdict and judgment are not sustained by the evidence.

On the whole case we contend that under the written contract sued on the L. & N. R. R. Co. undertook to carry the poultry from Trenton, Kentucky, to Evansville, Indiana, and no farther. Neither in the petition or amended petition is there an allegation that there was any other contract than the written contract, and so the question is merely one of construction.

### AUTHORITIES CITED AND REFERENCES MADE.

Contract. The International & Great Northern Railroad Company v. Tisdale, 4 L. R. A., 545; Bryan v. Memphis & Paducah R. R. Co., 11 Bush, 597; N. C. & St. L. R. R. Co. v. Carrico, 16

Ky. Law Rep., 66; Ireland v. M. & O. R. R. Co., 20 Ky. Law Rep., 1586; A. & E. Ency. of Law, 2d ed., vol. 6, pp. 657, 660; Wills v. Thomas, 72 Am. Dec., 238; Aigen v. Boston & Maine R. R., 132 Mass., 423; St. Louis Insurance Co. v. St. L., Vandalia, etc. R. R. Co., 104; U. S. Supreme Court Reports, 679; Deming v. Norfolk & Western R. R. Co., A. & E. R. R. Cases, vol. 16, p. 232; Post, etc. v. Southern Railway Co., 16 A. & E. R. R. Cases, New Series, 201; Chicago & N. W. Ry. Co., 20 A. & E. R. R. Cases, New Series, 726; Civil Code, sec. 4, paragraph 51; Civil Code, sec. 33, paragraph 732; Youngstown Bridge Co. v. White's Admr., 20 Ky. Law Rep., 1175; Beatty Coal Co. v. Bamberger, Bloom & Co.'s Assignee, 21 Ky. Law Rep., 830; Cincinnati Times Star Co. v. France, 22 Ky. Law Rep., 1666; Sherrill v. C. O. & S. W. R. R. Co., 11 Ky. Law Rep., 502; Harper v. N. N. & M. V. R. R. Co., 12 Ky. Law Rep., 333; C. & O. R. R. Co. v. Cowherd, 16 Ky. Law Rep., 733; Eichhorn v. L. & N. R. R. Co., 23 Ky. Law Rep., ——; 18 A. & E. Ency. of Law, 579, 580; Civil Code, paragraph, 101; Phoenix Insurance Co. v. Rogers, 38 Northwestern Reporter, 869; Pollard v. Taylor, 2d Bibb, 234; Murray v. Bright, 2d Marshall, 576; L. & N. R. R. Co. v. Tartar, 19 Ky. Law Rep., 229; R. N. I. & B. R. R. Co. v. Richardson, 19 Ky. Law Rep., 1495; L. & N. R. R. Co. v. Cooper, 19 Ky. Law Rep., 1152; L. & N. R. R. Co. v. Farmers' and Drovers' Live Stock Commission Firm, 21 Ky. Law Rep., 708.

A carrier is not liable for a loss occurring on a connecting line unless it undertook to carry beyond its own line. L. & N. R. R. Co. v. Tartar, &c., 19 Rep., 229; L. & N. R. R. Co. v. Cooper, 19 Rep., 1152; Richmond, &c., R. R. Co. v. Richardson, 19 Rep., 1495; Richmond, &c., R. R. Co. v. Richardson, 66 S. W., 1035; Pittsburg, &c., R. R. Co. v. Viers, et al., 68 S. W., 468.

7. In the car were 1,000 turkeys, 400 chickens and sixty geese. They were shipped in good condition. There was a delay of six or seven hours after the train arrived in Chicago in putting car up to depot. The car arrived at seven o'clock a. m., but was allowed to stand from seven o'clock a. m. till 11:30, when it was taken by switch engine to depot and then placed *not on team track by platform*, but elsewhere, where it was inaccessible until about 1:30 o'clock p. m., when it was put in proper place to be unloaded. The agents of shippers had been ready all day to unload it and were at appointed place by the platform half an hour waiting before the car was finally put where it could be unloaded. The car could not be entirely unloaded that evening for want of time. It was put in round house all night. Half or more of fowls froze to death by the negligence of railroad

46        KENTUCKY REPORTS.        [Vol. 115

Louisville & N. R. R. Co. and Others v. S. D. Chestnut and Bro.

company in delaying to put the car where it could be promptly unloaded. As the shippers did all they reasonably could there was no negligence by them. The instructions cover the case and the finding of the jury was in accordance with the facts.

B. B. PETRIE AND W. L. REEVES, FOR APPELLEES.

STATEMENTS OF POINTS AND AUTHORITIES.

1. The contract is a contract for through shipment.

2. It was made by the Louisville & Nashville Railroad Company and its connecting lines by the Louisville & Nashville Railroad Company acting for itself and as agent for its connecting lines.

3. It contained a stipulation that its provisions should inure to the benefit of its connecting lines, unless they provided otherwise.

4. The contract was seen and ratified by both connecting lines after it was executed. They made no other provision but received the car for shipment and did ship it under the said contract and the contract filed bears the stamp of the general freight office of the Chicago & Eastern Railroad Company impressed upon it.

5. The Louisville & Nashville Railroad Company was the agent of its connecting lines in making the contract and the contract was made in Todd county, Kentucky. Railroad v. Carrico, 95 Ky., 489; Pittsburg, C., C. & St. L. Ry. Co., 24 Ky. Law Rep., 356, 68 S. W., 469, and authorities there cited.

6. This would be the law whether the L. & N. R. R. Company was really agent for its connecting lines or not. A fortiori it would be the law where the connecting carrier subsequently ratified the contract as they did here. Pittsburg, C., C & St. Louis Ry. Co. v. Viers and Patterson, 24 Ky. Law Rep., 356, 68 S. W., 469.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellees, S. D. Chestnut & Bro., shipped a car load of turkeys from Trenton, Ky., to Chicago, Ill., on December 11, 1898. The car was carried by the Louisville & Nashville Railroad Company to Evansville, Ind., and there delivered to the Evansville & Terre Haute Railroad Company, which took it to Terre Haute, and there delivered it to the Chicago & Eastern Illinois Railroad Company, which transported it to Chicago all right, but failed to take it from its yard to the unloading track at Chicago; and while

the car was so delayed it turned very cold, and a number of the turkeys were frozen. The car reached Chicago about 7 o'clock in the morning, and should, in the ordinary course of business, have been unloaded in a few hours; but, by reason of the delay, the unloading of it was not finished until some time the next day. The proof by the defendants tended to show that the turkeys were not in good condition, and the loss on them was due in part to this fact, and in part to the delay of the consignee in unloading the car after it was placed on the proper track. The court peremptorily instructed the jury to find for the defendant, the Evansville & Terre Haute Railroad Company, and submitted the case to the jury as to the Louisville & Nashville Railroad Company and the Chicago & Eastern Illinois Railroad Company. There was no evidence showing negligence on the part of the Louisville & Nashville Company, and therefore the only question in the case is whether it is liable under the contract, as a through carrier, for the negligence of its connecting line.

The written contract, so far as is material, is in these words:

"Received by the Louisville & Nashville Railroad Company the following described live stock to be transported in accordance with the terms and conditions of the contract entered into below:

| Consignee, Destination, &c. | Description of Stock. | Car No. |
| --- | --- | --- |
| S. D. Chestnut & Bro.<br>Care of<br>   R. L. Brown & Son,<br>    Chicago, Ill.<br>Charges $22.00 | Poultry<br><br>Recd. | Tacoma<br><br>623 |

"Tariff rate on this shipment from Trenton to Evansville is $62.00 per car.

"Contract for Transportation of Live Stock.

"Trenton, Ky., Station, Dec. 11, 1898.

"This agreement made between the Louisville & Nashville Railroad Company and its connecting lines of the first part and S. D. Chestnut & Bro. of the second part Witnesseth, That, whereas the said Louisville & Nashville Railroad Company and its connecting lines transport live stock only as per above tariff; but in consideration that the said party of the first part will transport for the said party of the second part one car of poultry from Trenton, Kentucky, to Evansville, Indiana, station at the rate of thirty-one dollars per car and a free passage to the owner or his agent on the train with the animals (if shipped in car load quantities), the same being a special rate lower than the regular rate mentioned in the said tariff, the said party of the second part hereby releases said party of the first from all liability in the transportation of said animals, except as hereinafter agreed, and agrees that such liability shall be only that of a private carrier for hire; and it is further distinctly understood by the parties hereto that all liability of said Louisville & Nashville Railroad Company as carrier of said animals shall cease at its destined station if on said company's railroad, or if destined to a point beyond said company's railroad, then at said company's station at its terminus, when ready to be delivered to the owner, consignee, or carrier, whose line may constitute a part of the route to destination. . . .

"And it is further agreed that when necessary for said animals to be transported over the line or lines of any other carrier or carriers to the point of destination, delivery of the said animals may be made to such other carrier or carriers for transportation, upon such terms and conditions as the carrier may be willing to accept: provided that the terms and

conditions of this bill of lading shall inure to such carrier or carriers, unless they shall otherwise stipulate; but in no event shall one carrier be liable for the negligence of another."

The proof shows that appellees were charged $22 for the poultry car Tacoma, $31 for transporting it from Trenton to Evansville, and $54.40 as the freight from Evansville to Chicago; making, in all, $107.40, which was paid by the consignees in Chicago. It is insisted for appellees that the written contract is an undertaking by the Louisville & Nashville Railroad and its connecting lines to carry the car Tacoma from Trenton to Chicago; that they are all parties of the first part, who received the car to be carried to its destination, and are all bound alike by the stipulations of the contract to transport the car from Trenton to Evansville, and from Evansville to its destination. It is also urged that the limitations of the contract are not limitations on the obligation of any of the lines, but only an attempt to limit their liability by reason of the obligation; and the case of Ireland v. Mobile & Ohio Railroad Company, 105 Ky., 400, 20 R., 1586, 49 S. W., 188, 453, is relied on. But it will be observed that while the writing is a receipt by the Louisville & Nashville Railroad Company for the poultry car Tacoma, consigned to Chicago, Ill., it is stipulated that the party of the first part will transport the car from Trenton, Ky., to Evansville, Ind., and that all liability on the part of the Louisville & Nashville Railroad Company for the car shall cease at its terminus, when ready to be delivered to the connecting line; and it is also agreed that the car may be transferred to such connecting lines as are necessary to reach its point of destination. Taking the contract as a whole, we think it means that the Louis-

ville & Nashville Railroad Company is to transport the car to its terminus, and there deliver it to the connecting line, and to be no further responsible for it. The bill of lading in the case of the Mobile & Ohio Railroad Company read very differently. There the Mobile & Ohio Railroad Company was the only contracting party, and the court reached the conclusion that the covenants of the paper could only refer to it. A bill of lading on substantially the same form as that above quoted was before this court in L. & N. Railroad v. Tarter, 19 R., 229, 39 S. W., 698, and it was held that the initial carrier was not liable beyond its line. The court said: "The general rule is that a carrier is not liable beyond its own line, unless by contract to that effect, express or implied. Elliott on Railroads, sec. 1433; Bryan v. Memphis, etc., Railroad, 11 Bush, 597. It is held in most of the courts that the mere acceptance of goods directed to a point off the carrier's line is not a sufficient basis for the implication of a contract for extraterminal liability; but, whether so or not, it has never been held that such liability existed in the face of a contract to the contrary. This is not a case of attempted limitation of liability for negligence; hence the cases cited by appellee's counsel do not apply." The same rule was followed in L. &. N. Railroad v. Cooper, 19 R., 1152, 42 S. W., 1134, on the same form of bill of lading. The soundness of these rulings was recognized in the Ireland case, where the court said: "It is urged that the clause is an attempted limitation of the carrier's common-law liability, and is therefore void. We do not think so. At the common law, without a contract to the contrary, there was no liability beyond the carrier's own line." 105 Ky., 405, 20 R., 1586, 49 S. W., 188, 453. This was recently approved in P., C., C. & St. L. R. R. Co., v. Viers, etc., 113 Ky., 526, 24 R., 356, 68 S. W., 469. We therefore conclude that, under the contract referred to, the

Louisville & Nashville Railroad Company was not responsible beyond its own line.

As to the appellant, the Chicago & Eastern Illinois Railroad Company, a different question is presented. It had no officer in the State, and the process for it was served on the president of the Louisville & Nashville Railroad Company, on the idea that the Louisville & Nashville Railroad Company was its agent in the State in the making of the contract sued on, and therefore the process might be properly served on such agent. In Nashville, etc., Railroad Co. v. Carrico, 95 Ky., 489, 16 R., 66, 26 S. W., 177, under a bill of lading similar to that before us, it was held that as the contract was made in Marion county by the Louisville & Nashville Railroad Company, acting as agent for the appellant, the Nashville, etc., Railroad Company, the contract must, within the meaning of section 73 of the Civil Code of Practice, be regarded as made there by appellant itself, and as, by that section, an action against a common carrier upon a contract to carry property may be brought in the county in which the contract is made, the Marion circuit court properly had jurisdiction of the action. This case was followed in P., C., C. & St. L. v. Viers, etc., supra; but in both these cases the summons was served on an agent of the defendant in this State. By subsections 3, 4, section 51, of the Civil Code of Practice, it is provided that if the defendant operate a railroad the summons "may be served upon the defendant's passenger or freight agent stationed at or nearest to county seat of the county in which the action is brought.". The words "passenger or freight agent stationed at or nearest to the county seat of the county" must refer to a person who is in the service of the defendant, and is stationed by it at some point. The Louisville & Nashville Railroad Company, although it may

have acted as the agent of the defendant in making the contract, is not such an agent as the statute contemplates; and therefore the service of process upon it was invalid, and should have been quashed. But on the return of the case to the circuit court no further process will be necessary, as the appeal enters the defendant's appearance to the action. In 3 Cyc., 510, the rule on this subject is thus stated: "Taking an appeal or suing out of a writ of error from an inferior court to an intermediate appellate court, which tries the same *de novo,* constitutes a general appearance in the intermediate court, and confers jurisdiction of the person on that court, whether the court from which the appeal was taken had acquired jurisdiction of the person or not. If the appeal is to a reviewing court, it is a general appearance, in the sense that on reversal and remand to the trial court the defendant is in court for the purpose of further proceedings without any further steps to bring him into court, even though the judgment was reversed on the ground that the trial court had not acquired jurisdiction of the person of defendant." This rule was laid down in the year 1809 by this court in Grace v. Taylor, 4 Ky., 430. It was followed in 1815 in Graves v. Hughes, 7 Ky., 84, and Wharton v. Clay, 7 Ky., 167; also in 1826 in Hockaday, etc., v. Commonwealth and Adkins, 20 Ky., 12. In a number of subsequent cases the rule is adhered to. Bradford v. Gillaspie, 38 Ky., 67; Chesapeake, Ohio & Southwest R. R. Co. v. Heath's Adm'r, 87 Ky., 651, 10 R., 646, 9 S. W., 832; Thompson v. Moore, 91 Ky., 80, 12 R., 664, 15 S. W., 6, 358; Lillard v. Brannin, 91 Ky., 511, 13 R., 74, 16 S. W., 349.

After its objection to the process was overruled, the defendant filed answer to the merits, and there was a trial, and judgment on the whole case. From this judgment the

appeal before us is prosecuted.   It will therefore be before
the court on the merits when the action is returned to the
lower court.

Judgment reversed, and cause remanded for further pro-
ceedings consistent herewith.