CASE 54.—ACTION BY J. P. CHINN AGAINST THE FOSTER-MILBURN COMPANY FOR LIBEL.—June 19, 1909.

## Foster-Milburn Co. v. Chinn

Appeal from Mercer Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Evidence—Hearsay—Libel.—In an action for damages for the publication of a forged recommendation of patent medicine pills, a member of a medical association may not testify that an officer of the association analyzed the pills, and found them worthless, as such evidence is hearsay.

2. Libel and Slander—Forged Recommendations—Patent Medicine—Evidence.—In an action for the publication of a forged recommendation, evidence that plaintiff was ridiculed and laughed at by his friends is admissible.

3. Libel and Slander—Forged Recommendation—Patent Medicine—Evidence.—In an action for the publication of a forged recommendation of a patent medicine, evidence that there was a scale of prices paid for cards of this sort, the amount paid being dependant upon the office of the person, is admissible as tending to show that persons knowing of the custom might conclude that plaintiff had sold his signature.

4. Libel and Slander—Recommendation of Patent Medicine—Evidence—Impressions.—Where a person not a doctor sues for damages for the unauthorized publication of a recommen-

Foster-Milburn Co. v. Chinn.

dation of a patent medicine, physicians may not testify as to the impressions which they would draw from the fact that a person signed such recommendation; the pleading not asking, and the proof not showing, any special damages.

5. Libel and Slander—Nature—Action.—The gist of an action for libel is the injury to the character.

6. Libel and Slander—Actionable Libel.—Words verbally spoken are not actionable per se ordinarily, unless they impute a crime, but words which are written or printed are actionable when they subject the person to disgrace, ridicule, odium or contempt in the estimation of his friends and acquaintances or the public.

7. Constitutional Law—Privacy—Pictures.—A person is entitled to the right of privacy as to his picture, and that the publication of the picture of a person without his consent is a part of an advertisement for the purpose of exploiting the publisher's business is a violation of the right of privacy, and entitles him to recover without proof of special damages.

8. Libel and Slander—Forged Recommendation—Patent Medicine.—The publication in a patent medicine magazine having a circulation of 8.000,000 of a person's picture and sketch of him, along with a forged letter of recommendation, is actionable without allegation or proof of special damages.

9. Libel and Slander—Mitigation of Damages.—In an action for damages for the publication of a forged recommendation of a patent medicine along with the person's picture in a patent medicine magazine, that the defendant published it at the instigation of an agent honestly believing it to be genuine may be considered by the jury in mitigation of damages.

10. Appearance—Appeal as Appearance.—Where the service of process is insufficient to give the court jurisdiction, but defendant appeals to a reviewing court, it is in effect a general appearance in the action.

MARSHALL, REBADOW & THOMAS, J. F. VANARSDALL and SMITH & SMITH for appellant.

J. MORGAN CHINN, E. H. GAITHER and L. M. SMITH for appellees.

No briefs record out of office.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Foster-Milburn Company is a corporation with its principal office at Buffalo, N. Y. Among

other things it manufactures Doan's Kidney Pills, and publishes, to advertise the pills, "Doan's Directory." In this directory it printed a picture of J. P. Chinn, and, under the picture were these words: "Senator Chinn, famous Kentucky horseman, gives testimony. Was cured by Doan's Kidney Pills when miserable with pain in the back. Senator Jack Chinn is a prominent figure in the Blue Grass country of Kentucky, famous for its beautiful women and for its fine blooded horses. Col. Chinn, who is very popular and well known, was walking with Gov. Goebel when the latter was fatally shot. For many years he has been a large breeder of thoroughbred stock. Col. Chinn says he is glad to acknowledge the benefit he has derived from using Doan's Kidney Pills. His letter follows:

" 'Foster-Milburn Co., Buffalo, New York. Gentlemen:—I join in endorsing Doan's Kidney Pills which were recommended to me a few months ago when I was feeling miserable. Had severe pains in the back, was restless and languid. A few boxes of pills effectually routed the ailment and I am glad to acknowledge the benefit I have derived. Yours truly (facsimile reduced) J. P. Chinn.' " J. P. Chinn brought this suit against the Foster-Milburn Company charging that he had not written or signed the letter, that the publication was without his authority and charging that it had brought him into ridicule and greatly mortified him, and otherwise damaged him in the sum of $25,000. The defendant filed an answer traversing the allegations of the petition after a motion to quash the process had been overruled. A trial was had before a jury, which resulted in a verdict for the plaintiff for $2,500. The court entered judgment on the verdict, and the defendant appeals.

Dr. A. N. McCormick was allowed to testify on the trial as a witness for the plaintiff that he was a member of the American Medical Association; that an officer of that association had made an analysis of Doan's Kidney Pills; that he had seen a report of the analysis, and that the report showed that the pills were composed of certain ingredients; that a pill thus composed was harmless, but of no value, and that Doan's Kidney Pills were a fraud. The witness had not analyzed the pills. He knew nothing of what they contained, except what he had read from the report of the officer who had made the examination. This evidence was incompetent. A witness who has made a chemical analysis himself may testify as to the analysis which he has made, but all that Dr. Mc-Cormick knew was purely hearsay as to the nature of the pills, and his testimony that they were a fraud and valueless should not have been admitted because it was based upon the knowledge he had received of the contents of the pills from the report of their analysis. This evidence was very prejudicial to the defendant, as it stamped the pills as a fraud. The contents of the pills can only be proven by some person who knows the facts. Over the defendant's objection, Dr. A. D. Price was allowed to testify as follows: "Q. Are you acquainted with the general reputation among the medical profession, and intelligent people generally, of people who sign their names to medical testimonials in these medical almanacs—in what regard they are held? A. The medical profession pays no regard to anything of that kind that they may see. Q. Are you acquainted with that reputation from having heard it discussed among the medical profession—in which people who sign these testimonials are held? A. I suppose they get any

kind they want. A reputable physician does not regard a testimonial of that kind as worth anything. Q. In what repute are people who do that sort of thing held? A. In bad repute." Dr. M. L. Forsythe was also allowed to testify thus: "From your acquaintance with the medical profession generally are you acquainted with the repute in which one is held whose name appears in a patent medicine advertisement? A. Yes; I have heard it discussed, and have read of it a good deal. Q. In what repute are such men held by the profession—speaking as a scientific man—as doctor? A. In bad repute." Dr. C. P. Price and Dr. A. T. McCormick were allowed to give similar testimony.

In Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 113 Am. St. Rep. 768, Gill sued the Bradstreet Company for a report published concerning him by it as a commercial agency in which he was reported "in blank." The court held that what the words "in blank" meant according to the key furnished by the defendant to its subscribers might be shown, but that it was improper to show what effect such a report would have upon plaintiff's standing in commercial circles. The court said: "It was only the opinion of the witnesses about a matter that the jury were capable of judging and which it was their duty to determine. If the rating meant that the plaintiff had no credit and no capital, and such rating was false, it was libelous, and actionable, per se, and the jury should have been left to estimate its effect without the influence of the opinions of witnesses, however competent to judge of such matters. Townsend on Slander and Libel, 297. If the plaintiff suffered special damage by loss of credit, the injury and the cause of it were susceptible of proof, direct proof by

the persons with whom his credit suffered. If there was a general loss of credit on breaking down of commercial character and it was not susceptible of proof, it was a matter of opinion for the jury only, unaided by the opinions of outsiders."

In McDuff v. Detroit Evening Journal Co., 84 Mich. 1, 47 N. W. 671, 22 Am. St. Rep. 673, similar evidence was held incompetent. The court said: "The rules of pleading are founded upon reason and fairness. The issue in ordinary lawsuits is limited. The parties are more or less familiar with the transaction involved, and the defendant may fairly be presumed to have some knowledge of the testimony against him, and what witnesses he can produce to meet it. In a libel suit, under an allegation of general damages only, the issue is: What damages has the plaintiff suffered generally in the community where he is known by the publication of the libelous article, and not what he had suffered in individual instances, where those who have known him have treated him differently from what they did before. In the latter case, if he wishes to recover damages, he must allege them. No other rule would be fair and reasonable."

The plaintiff was not a doctor. He did not allege any special damages. If special damages have been sustained by reason of a libel, as if the plaintiff's business has been injured or other loss suffered by reason of it, such matters should be specially pleaded. The proof referred to did not show that the plaintiff had suffered special damages. It was simply the opinion of witnesses as to what doctors as a class would think. This is not a question of expert testimony. The jury, when the facts are shown, can judge of this as intelligently as the witnesses who were in-

troduced.  The plaintiff was properly allowed to show
that he had been ridiculed and laughed at by his
friends and acquaintances on account of the publica-
tion.  What had been thus said to him was competent
to show his mortification of feelings.  He was also
properly permitted to show that there was a scale of
prices paid for cards of this sort, the amount paid
being dependent upon the office of the person; for this
proof would tend to show that persons who knew of
the custom of paying for such cards might conclude
that the plaintiff had sold his signature.  In other
words the jury may hear proof of all facts which
would enable them intelligently to understand the im-
pression which the publication would reasonably
make on the plaintiff's friends and acquaintances or
the public generally.  But it is not a question of ex-
pert testimony as to what impression would be made
on a certain person or class of persons.  When the
facts are before the jury they can judge of this as in-
telligently as the witness.  In Riley v. Lee, 88 Ky.
610, 11 S. W. 714, 11 Ky. Law Rep. 588 (21 Am. St.
Rep. 358), this court, after a full discussion of the
authorities as to what constitutes a libel, thus stated
its conclusion: ''So it may be regarded as thoroughly
settled that if the written or printed publication tends
to degrade the person about whom it is written or
printed—that is, if it tends to reduce his character
or reputation in the estimation of his friends or ac-
quaintances or the public, from a higher to a lower
grade, or if it tends to disgrace him; that is, if it tends
to deprive him of the favor and esteem of his friends
or acquaintances or the public, or tends to render him
odious, ridiculous or contemptible in the estimation
of his friends or acquaintances or the public—it is
per se actionable libel.''  But the question is not what

impression was made, on a particular person of un-
usual sensibilities or peculiar notions, but what im-
pression would reasonably be produced on the gene-
rality of persons; that is, the common run of people
among the plaintiff's friends or acquaintances or the
public generally.  If an impression was made on a
peculiar class of persons causing special damages,
then this may be recovered, but, unless some special
damages has resulted, to introduce into the case the
peculiar notions of a particular person or class of
persons would only serve to confuse the issue to be
tried.

In Humphrey v. Miller, 19 E. C. L. 250, a circular
was sent out written by the secretary of a society for
the protection of the trade which imputed certain
specific facts to the plaintiff.  It was held that a wit-
ness could not be asked what he understood by find-
ing a persons's name in such a circular.  In the au-
thorities a libel is defined as a publication subjecting
the plaintiff to "public hatred, contempt, obliquy, or
ridicule."  25 Cyc. 243, 244 and notes; 18 Am. & Eng.
Encyc. 861; Cooley on Torts,  side pages 240-241;
Bishop on Noncontract Law,  Sec. 280, and note.
Where other words  are used,  they mean the same.
Thus in Hilliard on Torts, the language is this: "A
publication is a libel which tends to injure one's rep-
utation in the common  estimation of  mankind,  to
throw contumely or reflect shame and disgrace upon
him, or hold him up as an  object of  hatred,  scorn,
ridicule and contempt, although it imputes no crime
liable to be punished with infamy."  The gist of an
action for libel is  the injury to the  character.  In
Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284,
30 Ky. Law Rep. 290, it was held that the reputation
of the decedent among peace officers could not be

shown, but that the injury must be confined to his character generally. The same principle must apply here. We are therefore of opinion that the court erred in admitting the testimony above referred to.

It is earnestly insisted for the defendant that the publication is not actionable. There is an important difference between 'verbal slander and a written or printed publication. Words verbally spoken are not actionable per se ordinarily, unless they impute a crime, but words which are written or printed are actionable when they subject the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances or the public. How far the publication in question would subject a person to ridicule or contempt or make him odious is a question for the jury. While there is some conflict in the authorities, we concur with those holding that a person is entitled to the right of privacy as to his picture, and that the publication of the picture of a person without his consent, as a part of an advertisement for the purpose of exploiting the publisher's business, is a violation of the right of privacy, and entitles him to recover without proof of special damages. See Pavesich v. New England Life Insurance Company, 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101, 106 Am. St. Rep. 104, 2 Am. & Eng. Ann Cas. 561, and notes. It is a fraud on the public to publish indorsements of public men in publications of this character which are not genuine. A man has the right to complain when he is published in a directory having a circulation of 8,000,000 copies, as indorsing a patent medicine he has never seen. To publish with the forged letter his picture and a sketch of him is to give weight to the letter. The defendant did not publish the letter as it was written when sent to it by its

agent. The original letter began with these words: "I join with my congressional associates," etc. In publishing it the defendant omitted the words "with my congressional associates," and the sketch published above the letter shows the writer of it knew the plaintiff was not a member of Congress. It has become a custom in the press to publish the pictures of prominent public men; but it is a very different thing for a manufacturer to use without authority such a man's picture to advertise his goods in connection with a forged letter indorsing the goods.

The court did not err in refusing to give the instructions asked by the defendant on the trial. There was no substantial error in the instructions which the court gave the jury; but on another trial the court will conform instruction No. 1 to what was said in Riley v. Lee in defining libel. The court will also instruct the jury that if the defendant published the letter innocently and in good faith, believing it to be genuine, they may consider this in mitigation of damages, and give it such weight as they think proper.

We have not deemed it necessary to determine whether the court properly overruled the motion to quash the process, as the appeal enters the defendant's appearance to the case, and it will be before the court on the return of the action to the circuit court in any event. L. & N. R. R. Co. et al. v. S. D. Chestnut & Bro., 115 Ky. 43, 72 S. W. 351, 24 Ky. Law Rep. 1846, and cases cited. The rule is one generally recognized. It is thus stated in 3 Cyc. 511, where a number of authorities are given: "If the appeal is to a reviewing court it is a general appearance in the sense that on reversal and remand to the trial court defendant is in court for the purpose of further

proceedings without any further steps to bring him into court,. even though the judgment was reversed on the ground that the trial court had not acquired jurisdiction of the person of defendant.'' We see no other error in the record.

On another trial the court will confine the witnesses to the facts they know, excluding all hearsay testimony except on those matters where hearsay is admissible. Judgment is reversed and cause remanded for a new trial.

O'Rear, E. C., dissenting.