## Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Young, Judge.

### Same v. Same.

### Same v. Same.

(Decided May 29, 1917.)

## In Court of Appeals.

1. Carriers—Jurisdiction and Venue—Initial Carrier.—The provisions of the act of Congress known as the Carmack Amendment to the Interstate Commerce Law providing that the initial carrier of freight shall issue a bill of lading to the consignee and be liable to him for any damage which might accrue because of failure

to comply with the contract of shipment has the effect to force such initial carrier to obligate itself to deliver the shipment at the point of its destination, and the courts at that place having jurisdiction of the subject matter have venue jurisdiction of suits brought by the consignee to recover damages for a failure to comply with the contract, and a summons issued by such courts against the initial carrier may be served anywhere in the State upon its agent or person designated for that purpose, as is prescribed by statute regulating the subject.

2.  Carriers—Jurisdiction and Venue.—Shipments were made from Indianapolis to points in Bath and Montgomery counties, and the initial carrier that issued the bill of lading had no lines running into either of those counties but had an agent in Jefferson county. Held, that by issuing the bill of lading it agreed to deliver the shipments in those counties at the respective points of destination and that suits could be properly brought in those counties against it for a failure to comply with the contract, and summons properly served on its agent in Jefferson county.

JOHN A. JUDY, HUMPHREY, MIDDLETON & HUMPHREY and LOUIS SEELBACH, JR., for plaintiff.

JOHN G. WINN for defendant.

OPINION OF THE COURT BY JUDGE THOMAS—Overruling motion for writs of prohibition, and dismissing the petition.

There was instituted in the Bath circuit court a suit by Robert C. Gatewood against the plaintiff, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, seeking to recover against it judgment for $169.44, alleged damages growing out of the negligent shipment of a lot of cattle from Indianapolis, Indiana, to a point in Bath county, Kentucky, consigned to Gatewood, the plaintiff in that case.

At about the same time two other suits were filed in the Montgomery circuit court against the same defendant, in one of which $192.26 was sought to be recovered against it, and in the other only $75.00 was demanded. Each of those suits was based upon the same cause of action, and the identical facts, except that the destinations of the shipments were to points in Montgomery county.

In each case summons was issued against the defendant and served upon Judge A. P. Humphrey in Jefferson county, he being the agent designated by the defendant in those suits under the requirements of section 571 of the Kentucky Statutes.

The plaintiff herein appeared in each of those courts and in all of the cases entered motion to quash the return of the summons, and in support of same filed the affidavit of Judge Humphrey, upon whom the summonses had been served, stating in effect that the defendant railway company did not own, control or operate any line of railroad in either of those counties, nor did it have an agent of any character in either of them, and that the summons had been served upon him in Jefferson county by the sheriff of that county. These motions were overruled, followed by special demurrers filed to the jurisdiction of the court, which were likewise overruled.

Answers were then filed under protest, in each of the cases, the first paragraph of which was a plea to the jurisdiction of the court which had for its foundation the same facts involved and presented by the other motions made before in the cases.

The defendant and respondent herein is the presiding judge of both the Bath and Montgomery circuit courts. After what has been stated occurred, the respondent announced that he would hold that those courts over which he presided had jurisdiction of the person of the plaintiff herein, as, according to his judgment, the suits were properly brought within those courts and summonses properly executed as above indicated.

These three original suits filed in this court seek to prohibit the respondent from proceeding to try either of the cases, upon the ground that neither the Bath nor the Montgomery circuit courts has venue jurisdiction of them, and that the suits were improperly brought therein, and that neither court has jurisdiction of the person of the defendant therein, the plaintiff here.

The petitions filed in this court set out the above facts, and in addition incorporated all of the record of the proceedings in those cases, including the petition and the exhibit, which is a bill of lading issued by the plaintiff to the consignees of the cattle, the transportation of which it is charged was negligently done.

A general demurrer has been filed by respondent to each of the petitions, and also motions to strike, and without waiving either, answers were filed which present only more clearly the questions of law raised by the demurrers. The legal question thus submitted for our determination is whether the suits against the plaintiff

herein were properly brought in Bath and Montgomery counties. That part of section 73 of the Civil Code designating the venue of actions against common carriers is:

"Excepting the actions mentioned in section 75, an action against a common carrier, whether a corporation or not, upon a contract to carry property, must be brought in the county in which the defendant, or either of several defendants, resides; or in which the contract is made; or in which the carrier agrees to deliver the property."

From this it is seen that there are three places, if they exist in this state, where suits against common carriers upon contracts for carrying property may be brought. One is the county in which the defendant, or either of the defendants, resides; another is where the contract was made, and still another is the place where the carrier *agrees* to deliver the property.

The contracts for the shipment of the stock forming the basis for the suits in the Bath and Montgomery circuit courts were not made in Kentucky. The defendant in those suits, and plaintiff here, does not reside in this state, it being a foreign corporation. The only other place, then, where such suits might be brought in this state, if at all, is in the county, if any, where the defendant agreed to deliver the property. That points in Bath and Montgomery counties were the destination of the shipments is conceded, but it is insisted by counsel for plaintiff in this proceeding that their client, although the initial carrier, did not *agree* to deliver the stock beyond its own line, and which did not run into either Bath or Montgomery counties, and that it, therefore, did not agree to make delivery in either of those counties. It is true that the bills of lading forming the contracts do stipulate, in substance, that the plaintiff who issued them was not bound to make delivery at the point to which the shipments were consigned, but only to transport them over its own line and there deliver same to connecting carriers, but it does not follow from that stipulation that the contracts did not bind the carrier which issued them to make delivery at points of destination. The shipments being considered are admittedly interstate shipments, and are governed by the act of Congress of the United States applicable to such matters.

The act of Congress commonly known as the Car-
mack amendment to the Interstate Commerce Act pro-
vides that in interstate shipments the initial carrier
which issues a bill of lading shall be responsible to the
shipper or the owner of the property for the safe de-
livery thereof at the point of destination, regardless of
the fact that such initial carrier may not handle the
shipment throughout the transportation. Other pro-
visions of that amendment have nothing to do with the
question in hand.

The Supreme Court of the United States in the case
of Atlantic Coast Line Railroad Company v. Riverside
Mills, 219 U. S. 186, had under consideration that part
of the Carmack amendment just alluded to. In the
opinion it is recognized that at common law a common
carrier might regulate its liabilities by contract so as to
exempt it from anything occurring beyond its lines. It
is recognized therein that ordinarily a carrier would
not be bound beyond its own line unless it had specially
contracted otherwise. This doctrine has also been up-
held a number of times by this court, as will be seen from
the cases of Ireland v. Mobile & Ohio Railroad Co., 105
Ky. 400; I. C. R. R. Co. v. Curry, 127 Ky. 650, and Brunk
v. Ohio & Kentucky Railway Co., *idem* 304, and many
other cases.

The Supreme Court in the Riverside Mills case de-
termined that the Carmack amendment worked an en-
tire change of the common law rule as applicable to the
initial carrier in interstate shipments, and held that
the amendment by its own terms imposed upon the ini-
tial carrier contractual obligations to make delivery at
the point of destination, notwithstanding other inter-
mediate carriers may have handled the shipment during
transportation. The pertinent parts of the opinion in
that case as applicable to the point under consideration
are:

"The indisputable effect of the Carmack amendment
is to hold the initial carrier engaged in interstate com-
merce and 'receiving property for transportation from
a point in one state to a point in another state' as hav-
ing contracted for through carriage to the point of desti-
nation, using the lines of connecting carriers as its
agents. . . . .

"It must be conceded that the effect of the act (Car-
mack amendment) in respect of carriers receiving pack-

ages in one state for a point in another and beyond its own lines, is to deny to such an initial carrier the former right to make a contract limiting liability to its own line. . . . . The requirement that carriers who undertook to engage in interstate transportation, and as a part of that business held themselves out as receiving packages destined to places beyond their own terminal, should be required as a condition of continuing in that traffic to obligate themselves to carry to the point of destination, using the lines of connecting carriers as their own agencies, was not beyond the scope of the power of regulation.''

In the still later case of Galveston, H. & S. A. Railway Company v. Wallace, 223 U. S. 481, the court followed the rule in the Riverside Mills case, *supra,* in the construction which was therein given to the Carmack amendment, saying:

''Under the Carmack amendment, as already construed in the Riverside Mills case, wherever the carrier voluntarily accepts goods for shipment to a point on another line in another state, it is conclusively treated as having made a thorough contract. It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation and delivery. This case, then, must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad.''

Other, but inferior federal courts have uniformly laid down the same principle, and as the question is one of construction and application of the federal statute, we are necessarily bound by those decisions of the federal courts. From them it will be seen that the law itself forces the initial carrier to enter into a contract to carry the shipment to its destination, and to employ intermediate carriers as its agents to complete the contract after the shipment leaves its lines.

Notwithstanding these decisions, counsel for plaintiff endeavor to draw a distinction by saying that there is a difference between a binding obligation to carry to the point of destination, and responsibility for failure to carry to such destination, and they illustrate their contention by saying that a surety for a contractor is liable to the builder for a failure of the contractor to perform

the work, but there is no obligation on the part of the surety to himself perform the work, it being insisted that the initial carrier under the Carmack amendment agrees only to do that which the surety in the builders' contract agrees to do, to-wit, answer in damages if the contract is not performed. The illustration at first blush appears to be plausible, but the vice in it rendering it not analogous is that the surety in the builders' contract case at no time primarily agrees, expressly or by implication of law, to perform any part of the construction work, nor did it agree to obtain others to perform that part which it did not do. An initial carrier's contract in an interstate shipment obligates it to perform the part of the transportation over its own line, and to obtain others to perform that part going beyond its line. These differences render the illustration non-applicable. Besides, the opinions from the Supreme Court, *supra*, expressly hold to the contrary, and make the transaction an obligation on the part of the initial carrier itself to see to it that the contract is fully performed. These federal decisions render it unnecessary to consider the various opinions from this court dealing mostly with intrastate shipments respecting the contractual liability of the initial carrier. We, therefore, conclude that the plaintiff in this proceeding before us *agreed* to deliver the property in Bath and Montgomery counties, and under the provisions of section 73 of the Civil Code the circuit courts of those counties had jurisdiction of the suits filed to recover damages for violation of the shipping contracts, and that the respondent as judge of those courts properly so held.

We have not discussed or considered the question of this court taking jurisdiction of proceedings of this kind seeking to control the ruling of trial courts having jurisdiction of the subject matter upon questions pertaining to the jurisdiction of the person of the defendant. We have refrained from doing so in this case for the two reasons that the point was not presented by any motion or other step made or taken by the defendant, and that it was perfectly clear that the suits against plaintiff here were properly brought in the Bath and Montgomery circuit courts and that the summonses executed on it in the manner shown fully conformed to our practice. By this opinion, therefore, we do not decide that this court would in all cases take jurisdiction to

grant writs of prohibition against a judge of a trial court when the action sought to be prohibited is taken in a suit wherein the amount involved would not give this court appellate jurisdiction, and it is not intended that this opinion shall be accepted as a precedent for our taking jurisdiction in all cases to review such rulings and orders of the trial court.

It follows that the demurrer to the petitions should be and it is sustained, the petitions are dismissed, the . motion for the writ in each case is denied, and the temporary writs heretofore granted are discharged.